McWILLIAMS, Senior Circuit Judge.
 

 In a sixteen-count indictment Jimmy Jess Guest and three others were charged with various drug offenses. As a result of a plea bargain, Guest pleaded guilty to count one in the indictment and the remaining charges against Guest were dismissed. •
 

 A presentence report was prepared and filed with the district court, to which counsel for Guest made written objections. The district court then held a two-day hearing on Guest’s objections to the presentence report, at which time several witnesses testified at length, including Guest.
 

 The district court made findings wherein it sustained, in part, Guest’s objections to the presentence report and denied, in part, his objections. In so doing, the district court determined that under the Sentencing Guidelines, Guest’s base offense level was 32 and his criminal history category was I. The district court refused to follow the recommendation in the presentence report that Guest’s base offense level be given a four-level upward adjustment for being a leader in the criminal activity giving rise to the indictment. However, without objec
 
 *578
 
 tion, the district court did increase Guest’s base offense level from 32 to 34 for possession of a firearm in connection with his drug dealings. The district court then followed the recommendation in the presen-tence report that Guest’s acceptance of responsibility ■ warranted a two-level downward adjustment, reducing Guest’s total offense level to 32.
 
 [1]
 

 The guideline sentencing range for a person with a total offense level of 32 and a criminal history category of I is imprisonment for 121 to 151 months. The district court imposed the maximum term permitted by the Guidelines, namely 151 months, and explained her reasons for so doing. Under 18 U.S.C. § 3742, Guest now appeals the sentence thus imposed and asserts that the district court erred in determining his base offense level. -
 

 As indicated, Guest pleaded guilty to count one in the indictment and in exchange the remaining charges against him in the indictment were dismissed. Count one charged Guest and two of his three co-defendants with conspiring from June 1, 1988, until January 19, 1991, to distribute marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). However, in determining Guest’s base offense level the district court considered not only the amount of marijuana Guest handled but also the cocaine and amphetamines involved.
 
 [2]
 
 The district court’s findings as to the total amount of drugs in: volved in this drug dealing operation are attached to this opinion as Attachment A.
 
 [3]
 

 As we understand it, counsel on appeal does not object to the district court’s finding as to the amount of marijuana which was factored into the district court’s calculation of Guest’s base offense level. Counsel also states that the amount of amphetamine considered by the district court would not change Guest’s base offense level, and accordingly, counsel does not here pursue that particular matter. However, counsel does object to the district court’s findings as to the amount of cocaine that should be factored into Guest’s base offense level.
 
 [4]
 

 As concerns cocaine, counsel specifically objects to the district court’s factoring into the calculation of Guest’s base offense level cocaine delivered to one Darían Dolph for the latter’s personal use. Although it would appear that the matter was not raised in the district court, counsel, on appeal, also asserts that the district court erred in factoring into Guest’s base offense level cocaine which he kept for his own personal use. Apparently counsel’s argument in this regard is that since Guest pleaded guilty to conspiracy to
 
 distribute
 
 marijuana, Guest’s possession of cocaine for his
 
 personal use
 
 and the sharing of cocaine with friends for their
 
 personal use
 
 is not relevant conduct because it is not part of the same “common scheme or plan” as the count to which he pleaded guilty.
 

 So far as we can tell from the record before us, in calculating Guest’s base
 
 *579
 
 offense level the district court did not mention cocaine kept for Guest’s personal use. The court did include in its calculation of Guest’s base offense level cocaine Guest gave Dolph. On appeal, counsel takes particular aim at that inclusion, stating that the finding that Guest gave Dolph 365 ounces of cocaine over the course of one year raised Guest’s base offense level from 28 to 32.
 

 In his testimony at the hearing on his objections to the presentence report, Guest testified that both he and Dolph had a cocaine habit. In response to the question of how “extensive” his cocaine habit was, he stated it was “as much as an ounce a day.” Guest also testified that Dolph’s habit was the same as his and that both of them were using approximately an ounce of cocaine a day for a year. In response to further inquiry as to just where Dolph got “his one ounce of cocaine a day,” Guest answered, “Oh, I had a drug problem and he had a drug problem and I had drugs and we — he got it from me.”
 

 The foregoing recital indicates to us that the district court’s finding that Guest delivered to Dolph for the latter’s personal use approximately 365 ounces (1 ounce per day X 365 days) over a one-year period is supported by the record. Further, we reject the suggestion that Guest’s delivery of cocaine to Dolph, and. possibly others for their use, is not a part of Guest’s overall drug activity. It is agreed that a “preponderance of the evidence” is the quantum of proof required in a sentencing procedure.
 
 United States v. Clonts,
 
 966 F.2d 1366 (10th Cir.1992). Further, the general rule is that in calculating drug quantities for sentencing purposes, a district court may make estimates “based on information with a minimum indicia of reliability.”
 
 United States v. Coleman,
 
 947 F.2d 1424, 1428 (10th Cir.1991).
 

 In this same general connection, we reject the argument that in fixing the amount of cocaine Guest delivered to Dolph the district court “extrapolated” bits of Guest’s testimony and made projections therefrom that are only speculative. The district court was entitled to rely on Guest’s statements that he delivered to Dolph on the average of one ounce of cocaine per day for a period of over a year. Whether Dolph thereafter personally used the cocaine or gave it to others is immaterial. The important thing is that Guest admitted distributing cocaine to Dolph for a year at the rate of an ounce a day.
 

 In sum, the district court did not err in its determination of Guest’s base offense level. The district court’s findings as to the amount of drugs involved in this drug operation are supported by the record and are not clearly erroneous. The district court carefully identified the amount of cocaine distributed by Guest. This was- a drug operation of considerable proportions extending over a relatively long period of time. And if Guest wasn’t a “leader” in the operation, he most certainly was not “on the fringe.” He was deeply involved in the criminal activity.
 

 Judgment affirmed.
 

 ATTACHMENT A
 

 THE COURT: My provisional findings regarding the amount of drugs which constitute the relevant offense conduct of Mr. Guest are as follows and I’m going to be specific so that there can be no question what I am finding was proved by a preponderance of the evidence.
 

 Marijuana: 42 pounds sold to Earl Cal-loway on January 5th; 62 pounds found at the home at the time of the search warrant; 64 pounds brought by Luz Mar-roquin which I find attributable to this defendant; 50 pounds which Mr. Guest testified he' sold Earl another time; 55 pounds which this defendant estimated was the amount he brought back in two trips to San Antonio; and 100 pounds which was the rough estimate of all other marijuana transactions lumped together. That is a total of 373 pounds.
 

 Cocaine: I am crediting defendant with the one' ounce purchased by Koivisto; 190 grams which was found in the house at the time of the search warrant; one kilo which was to be purchased by Koiv-isto and Poindexter; 156 grams which
 
 *580
 
 was given to Poindexter over the course of a year; and 365 ounces which was given or otherwise transferred to Darían Dolph for his personal use over the course of a year. I am also including an additional 32 ounces of cocaine originally testified to by Strickler as having been seen in the defendant’s bedroom and supported by the numerous other cocaine transactions for which no amount can be derived but all of which I am lumping in as that 32 ounces. That is a total of 12,629 grams. I don’t have my original notes so I can’t tell counsel where those figures come from except it’s 190 grams that was found in the house, the 1,000 grams that was the kilo, the 365 ounces plus the 1 ounce plus the 32 ounces is 398 ounces which is 11,283 grams. The 156 — oh, is the amount given to Poindex-ter over the course of a year. That totals, according to my calculations, 12,-629 grams.
 

 I am crediting this defendant with the 58 grams of methamphetamine that was found at his house at the time of the search warrant. The total translates to 2,752 grams of heroin which is in the 1 to 3 kilos range which results in an offense level of 32. Does either counsel have any dispute with my mathematics?
 

 MR. COURBOIS: No, Your Honor. In terms of clarification — and this may be outside of what we’re entitled to ask you at this point — but are you crediting the defendant with one ounce a day as distributed to Darian Dolph for a total year based on his testimony?
 

 THE COURT: Yes.
 

 MR. COURBOIS: As if they did that every single day?
 

 THE COURT: That was his testimony. It was my understanding that was his testimony and that’s what that is based on. I would announce for purposes of this record, as they should ultimately be separated, that I am not giving any credibility or any credit or any regard to Darian Dolph’s testimony in any way in this computation.
 

 [1]
 

 . The presentence report set Guest’s total offense level at 36, which included a four-level upward adjustment because of his leadership role in the criminal activity. As indicated, the district court declined to make such upward adjustment.
 

 [2]
 

 . Two counts of the indictment charged Guest with drug violations involving cocaine. Under the plea agreement, those counts were dismissed. However, in
 
 United States v. Gonzales,
 
 930 F.2d 795, 797 (10th Cir.1991), we held that in determining the defendant’s base offense level, the district court properly included the amount of marijuana involved in counts that were dismissed pursuant to a plea agreement.
 

 [3]
 

 . The presentence report stated that Guest distributed 4,564.1 grams of cocaine. The district court declined to follow that recommendation and found that in fact Guest distributed 12,629 grams of cocaine.
 

 [4]
 

 . Under United States Sentencing Commission,
 
 Guidelines Manual,
 
 § 1B1.3, comment, (backg’d.), quantity and types of drugs not specified in the count of conviction are to be included in determining a defendant’s base offense level “if they were a part of the same course of conduct or part of a common scheme or plan as the count of conviction.” U.S.S.G. § 2D1.1, comment, (n. 12) also provides that types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. Accordingly, we reject the suggestion that the quantity of drugs involved in counts that were dismissed may not be considered in calculating Guest's base offense level.