**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bobby Ray McCASKEY a/k/a Snake
and Lionel Legard a/k/a Max,
Defendants–Appellants.**

No. 92–3790.

United States Court of Appeals,
Fifth Circuit.

Dec. 6, 1993.

Terry E. Allbritton, Kenneth J. Servay, New Orleans, LA (Court-appointed), for Lionel Legard.

Robert F. Bernard, Asst. Federal Public Defender, New Orleans, LA, for Bobby Ray McCaskey.

Herbert W. Mondros, John Braud, Asst. U.S. Attys., Harry Rosenberg, U.S. Atty., New Orleans, LA, for U.S.

Before REYNALDO G. GARZA, KING and DeMOSS, Circuit Judges.

PER CURIAM:

Bobby Ray McCaskey and Lionel Legard pleaded guilty to conspiracy to distribute cocaine hydrochloride. Each defendant now appeals his sentence. Legard, in the alternative, seeks to have his guilty plea vacated.

## I. BACKGROUND

On December 12, 1991, a grand jury indicted Bobby Ray McCaskey and Lionel Legard in a multi-count indictment, charging them as follows: (I) conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846 "from on or about November 4, 1991, and continuing until on or about November 26, 1991"; (II) distribution of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 on or about November 4, 1991 [1]; (III) distribution of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 on or about November 14, 1991; and (IV) distribution of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 on or about November 19, 1991. The indictment also charged Legard alone with two additional counts: (V) distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) on or about April 19, 1991; and (VI) distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) on or about October 24, 1991. Legard and McCaskey were arraigned on December 16, 1991, in the United States District Court for the Eastern District of Louisiana and pleaded not guilty to all charges. On the date of arraignment, Legard and McCaskey signed "waiver of conflict of interest forms" whereby they both consented to be represented by retained counsel Blake Jones.

Legard and McCaskey entered into written plea agreements with the government, whereby each agreed to plead guilty to the conspiracy count and the government agreed to request dismissal of the remaining counts. Legard and McCaskey pleaded guilty to the conspiracy count on April 6, 1992. The district court rearraigned both defendants on that date, accepted the plea agreement, and adjudged the defendants guilty. Accordingly, the court ordered preparation of presentence investigation reports (PSRs) for both defendants. The sentencing date was set for June 17, 1992; at the government's request sentencing was continued to July 15, 1992, because of delays in preparation of the PSRs. The defendants then moved for a continuance based on information they had received that government tests on some of the illicit substances at issue tended to show that they were cocaine base instead of cocaine hydrochloride, and sentencing was continued until August 12, 1992. A weather emergency resulted in still another continuance, this time until September 2, 1992.

Two days before the sentencing date, the government notified the defendants that it intended to adduce testimony during the sentencing hearing that the substance involved in the incident charged in Count II was actually cocaine base instead of cocaine hydrochloride. At the sentencing hearing on September 2, 1992, the defendants' attorney tendered to the court a memorandum on behalf of McCaskey alone objecting to the parts of McCaskey's PSR that considered any substance as cocaine base. Government witnesses testified at the sentencing hearing that the substance charged in Count II of the indictment was cocaine base rather than cocaine hydrochloride. The sentencing court adopted Legard's PSR in the absence of any objection, sentencing Legard to ninety months imprisonment, to be followed by a supervised release term of five years, and ordering him to pay a special assessment of

---

1. Although the indictment states that the transaction charged in Count II took place "[o]n or about November 4, 1991," there was evidence that this transaction actually took place on November 5, 1991.

$50. With respect to McCaskey, the sentencing court asked if he wanted to withdraw his guilty plea; McCaskey's attorney answered in the negative. The court adopted McCaskey's PSR as to all undisputed issues and resolved McCaskey's objection in favor of the PSR's recommendation that the Count II substance should be considered as cocaine base for sentencing purposes. The court sentenced McCaskey to sixty-five months imprisonment, to be followed by a supervised release term of five years, and ordered McCaskey to pay a special assessment of $50. The court dismissed the remaining counts of the indictment as to both defendants.

Both defendants now appeal. The district court appointed new counsel on appeal for each of the defendants.

## II. STANDARD OF REVIEW

■■■ The factual findings made by a district court in its determination of a defendant's relevant conduct for sentencing purposes are subject to the "clearly erroneous" standard of review on appeal. *United States v. Buckhalter*, 986 F.2d 875, 879 (5th Cir.), cert. denied, — U.S. —, 114 S.Ct. 203, 126 L.Ed.2d 160, *and cert. denied*, — U.S. —, 114 S.Ct. 210, 126 L.Ed.2d 167 (1993); *United States v. Lokey*, 945 F.2d 825, 839 (5th Cir.1991). Factual findings made in support of a sentencing determination must be supported by a preponderance of the evidence. *Buckhalter*, 986 F.2d at 879. The district court's sentence will be upheld so long as it results from a correct application of the guidelines to factual findings that are not clearly erroneous. *United States v. Rivera*, 898 F.2d 442, 445 (5th Cir.1990). The district court's interpretations of the guidelines, being conclusions of law, are reviewed de novo. *United States v. Madison*, 990 F.2d 178, 182 (5th Cir.1993), cert. dismissed, — U.S. —, 114 S.Ct. 339, 126 L.Ed.2d 305 (1993).

We note that the version of the sentencing guidelines in effect from November 1, 1991, through October 31, 1992, applies to the appellants because they were sentenced on September 2, 1992. *United States v. Gross*, 979 F.2d 1048, 1050–51 (5th Cir.1992) (citing 18 U.S.C. § 3553(a)(4)).

## III. LIONEL LEGARD

Legard raises several challenges to his sentence. He contends, *inter alia*, that the sentencing court considered drug transactions outside the scope of the conspiracy with which he was charged in calculating his sentence, that the government improperly enhanced his sentence by showing that a drug transaction involved cocaine base instead of cocaine hydrochloride as charged in the indictment, and that the government failed to prove adequately that the substance involved in Count II of the indictment was in fact cocaine base. McCaskey, we note, has moved that we consider all of Legard's arguments as they may apply to his sentence as well, and we have granted his motion.

### A. Computation of Legard's Base Offense Level

The sentencing court adopted Legard's PSR in determining his sentence. The PSR recommended a finding of a base offense level of twenty-six, based on the finding that all the drugs involved in the incidents charged in Counts II through VI of the indictment were relevant conduct under § 1B1.3 of the sentencing guidelines. The PSR also recommended a two-level reduction for acceptance of responsibility. Based on a total offense level of twenty-four and Legard's criminal history category of IV, the PSR stated that the appropriate guideline sentencing range was seventy-seven to ninety-six months imprisonment. The sentencing court adhered to the guideline sentencing range in sentencing Legard to ninety months imprisonment.

### 1. Consideration of the Count V and VI Transactions as Relevant Conduct

Legard concedes that the transactions charged in Counts II through IV were correctly considered as relevant conduct in determining his base offense level; he raises two challenges, however, to the consideration of the transactions charged in Counts V and VI as relevant conduct. First, he argues that the sentencing court erred by applying § 1B1.3 of the sentencing guidelines, entitled

"Relevant Conduct (Factors that Determine the Guideline Range)," in determining his sentence. *See* United States Sentencing Commission, *Guidelines Manual,* § 1B1.3 (Nov.1991).[2] Second, he argues that, even if § 1B1.3 applies, the transactions charged in Counts V and VI of the indictment still should not be considered for sentencing purposes. Because the government does not object to our consideration of these arguments, insofar as they present purely legal questions, we will do so in spite of Legard's failure to object at sentencing.

■ Legard first contends that the United States probation officer who prepared his PSR, and the district court by adoption, erred by applying § 1B1.3 of the sentencing guidelines to determine his relevant conduct and his base offense level. In his view, § 2D1.4, the drug conspiracy sentencing guideline, alone should have been applied to determine his base offense level. For support he cites § 1B1.3 itself, which provides that it shall be used to determine a defendant's base offense level only "where the guideline [applicable to the defendant's offense] specifies more than one base offense level." U.S.S.G. § 1B1.3(a)(i); *United States v. Warters,* 885 F.2d 1266, 1274 (5th Cir. 1989). Legard argues that § 2D1.4 specifies only one base offense level, and that § 1B1.3 was therefore wholly inapplicable to his sentencing.

Legard's argument is clearly wrong. In applying the sentencing guidelines, the district court must first determine the applicable offense guideline section from Chapter Two. *Rivera,* 898 F.2d at 445 (citing U.S.S.G. § 1B1.1(a)). The applicable guideline section for conspiracy to distribute cocaine is § 2D1.4. That section, which was deleted from the guidelines and consolidated with the guidelines applicable to the underlying substantive offenses effective November 1, 1992, provides in its entirety as follows:

(a) Base Offense Level: If a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall

be the same as if the object of the conspiracy or attempt had been completed.

U.S.S.G. § 2D1.4(a). Thus, the offense level derives from § 2D1.1(a)(3), which references § 2D1.1(c) (Drug Quantity Table). *United States v. Mitchell,* 964 F.2d 454, 458 (5th Cir.1992). The Drug Quantity Table provides for a wide range of base offense levels depending on the quantity of drugs attributable to the offender. Thus, the guidelines specify more than one base offense level for conspiracy to distribute cocaine, and the conduct relevant to determining the offense level is governed by § 1B1.3(a). *Id.*

■ Legard next maintains that the application notes to § 2D1.4 make clear that § 2D1.4 alone governs the relevant conduct determination in drug conspiracy cases. The relevant passages from that commentary read as follows:

[i]f the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, *each conspiracy transaction* shall be included with those of the substantive counts of conviction to determine scale.... If the defendant is convicted of conspiracy, *see* Application Note 1 to § 1B1.3 (Relevant Conduct).

U.S.S.G. § 2D1.4 cmt. n. 1 (emphasis added). It has been settled that the sentencing commission's commentary to the guidelines must be given controlling weight by courts applying the guidelines unless the commentary is violative of the Constitution or federal statute, or plainly erroneous or inconsistent with the guidelines themselves. *Stinson v. United States,* — U.S. —, —— – ——, 113 S.Ct. 1913, 1919–20, 123 L.Ed.2d 598 (1993).

Legard's argument that § 2D1.4 precludes any reference to § 1B1.3 is undercut from the outset by the plain directive "[i]f the defendant is convicted of conspiracy, *see* Application Note 1 to § 1B1.3 (Relevant Conduct)." U.S.S.G. § 2D1.4 cmt. n. 1. Nevertheless, he argues that § 2D1.4 and its com-

---

**2.** All citations to the sentencing guidelines in this opinion are to the version effective November 1, 1991, unless otherwise indicated.

**374**

mentary specifically limit the transactions to be considered in sentencing a conspiracy defendant to the substantive transactions that formed a part of the defined conspiracy, apparently relying on the first sentence of application note 1 for support. This sentence, however, does not require the district court to disregard § 1B1.3 and its commentary. Instead, we read the first sentence of application note 1 as merely clarifying that, when a defendant is convicted of conspiracy, his sentence shall be based on all drug transactions that come under the label of "conspiracy transactions," regardless of whether those transactions are the subject of separate counts of conviction. The commentary to § 1B1.3 is directly relevant to the determination of whether given transactions are "conspiracy transactions" because that commentary defines conduct attributable for sentencing purposes to a defendant convicted of conspiracy. U.S.S.G. § 1B1.3 cmt. n. 1. Neither the probation officer who prepared the PSR nor the district court that adopted it erred as a matter of law by relying on § 1B1.3 in determining Legard's sentence.

Legard's next argument, however, is more subtle. Even conceding that Application Note 1 to § 1B1.3 must be consulted to determine which transactions are "conspiracy transactions" within the meaning of Application Note 1 to § 2D1.4, Legard submits that § 2D1.4 and its application notes prohibit the sentencing court from considering an offender's relevant conduct under § 1B1.3(a)(2) unless such conduct also qualifies as a "conspiracy transaction" under § 2D1.4. We do not agree, for reasons best demonstrated by a careful review of the basic structure of the guidelines themselves. The first task of a court applying the guidelines is to determine the defendant's appropriate guideline section from Chapter Two, in this case § 2D1.4. *See Rivera*, 898 F.2d at 445. That section prescribes no base offense level of its own, but incorporates the multiple base offense levels of the Drug Quantity Table of § 2D1.1(c). Because § 2D1.1(c) prescribes multiple base offense levels on the basis of drug quantity, some method of determining the quantity of drugs for which the offender is responsible must be used. Plainly, Application Note 1 to § 2D1.4 directs the court to include all quantities of drugs involved in conspiracy transactions, regardless of whether those transactions are also the subjects of substantive counts of conviction. Transactions are to be deemed "conspiracy transactions" if they come within the broad parameters of Application Note 1 to § 1B1.3.

The sentencing court's next step, in the normal course of sentencing, would be to consider other relevant conduct by the offender in keeping with § 1B1.3(a)(2), which directs him to consider the offender's "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Legard argues, however, that § 2D1.4 acts as a limit on the type of relevant conduct a court may consider under § 1B1.3(a)(2). Specifically, he again emphasizes the application note directing that "[i]f the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, *each conspiracy transaction* shall be included with those of the substantive counts of conviction to determine scale." U.S.S.G. § 2D1.4 cmt. n. 1 (emphasis added). In his view, this language is language of limitation; if conduct that would ordinarily be relevant conduct under § 1B1.3(a)(2) is not a "conspiracy transaction," Legard posits that there is a conflict between § 2D1.4 and § 1B1.3(a)(2) that must be resolved in his favor under the rule of lenity.

We do not believe that § 2D1.4 and § 1B1.3(a)(2) are in conflict, nor do we read § 2D1.4 as imposing any limitations upon the full operation of § 1B1.3(a)(2). First, § 1B1.3(a) appears to apply in its entirety "[u]nless otherwise specified." U.S.S.G. § 1B1.3(a). Nothing in § 2D1.4 or its commentary can fairly be read to specify the inapplicability of § 1B1.3 or any of its parts. Furthermore, the commentary to § 1B1.3(a)(2) specifically contemplates the full operation of § 1B1.3(a)(2) in conjunction with an attempt crime punishable under § 2D1.4:

> [Section 1B1.3(a)(2) ] applies to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, had the defendant been convicted of multiple

counts. For example, the defendant sells 30 grams of cocaine (a violation of 21 U.S.C. § 841) on one occasion and, as part of the same course of conduct or common scheme or plan, attempts to sell an additional 15 grams of cocaine (a violation of 21 U.S.C. 846 [sic]) on another occasion. The defendant is convicted of one count charging the completed sale of 30 grams of cocaine. The two offenses (sale of cocaine and attempted sale of cocaine), although covered by different statutory provisions, are of a character for which § 3D1.2(d) would require the grouping of counts, had the defendant been convicted of both counts. Therefore, subsection (a)(2) applies and the total amount of cocaine (45 grams) involved is used to determine the offense level.

§ 1B1.3 cmt. n. 2. The illustration works equally well if the crime of conspiracy, also prohibited by 21 U.S.C. § 846, is substituted for the crime of attempt. We hold that § 1B1.3(a)(2) operates in its usual fashion in determining the ultimate base offense level of an offender in Legard's position. Thus, the transactions alleged in Counts V and VI were properly considered by the sentencing court if those transactions were "part of the same course of conduct or common scheme or plan" as the conspiracy alleged in Count I.

Legard next contends that, even under § 1B1.3(a)(2), the sentencing court erred by considering the cocaine base transactions charged in Counts V and VI of the indictment as relevant conduct. This contention appears to have two distinct components. On the one hand, he argues that the sentencing court erred as a matter of law in holding that the transactions charged in Counts V and VI could, under any circumstances, constitute relevant conduct under the guidelines with respect to the conspiracy defined in Count I. Additionally, he appears to challenge the sentencing court's factual findings that those transactions were relevant conduct in this particular case. Legard bases these challenges on the following facts: (1) the transactions charged in Counts V and VI occurred before the time frame of the conspiracy defined in Count I; (2) the transactions charged in Counts V and VI involved cocaine base, but the conspiracy defined in

Count I involved cocaine hydrochloride; and (3) there was no evidence that the transactions charged in Counts V and VI were connected with the conspiracy charged in Count I, or, for that matter, with any conspiratorial activity whatever.

▪ Addressing the purely legal questions first, we hold that drug transactions occurring before the precise time frame of the conspiracy for which a defendant is convicted may be considered for sentencing purposes if those transactions otherwise satisfy the criteria for relevant conduct prescribed by the guidelines. We have so held in previous cases. *E.g., Lokey,* 945 F.2d at 830, 839–40; *United States v. Woolford,* 896 F.2d 99, 102–04 (5th Cir.1990). We hold also that it is permissible for a sentencing court to consider a defendant's transactions in one type of drug even if his conviction was for conspiracy involving a different type of drug, again assuming that those transactions otherwise satisfy the criteria for relevant conduct prescribed by the guidelines. This holding is supported by the background commentary to § 1B1.3, which provides that,

> in a drug distribution case, quantities *and types* of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

U.S.S.G. § 1B1.3 cmt. (backg'd) (emphasis added); *see also* U.S.S.G. § 2D1.1 cmt. n. 12 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level."); *United States v. Guest,* 978 F.2d 577, 578–79 (10th Cir.1992). The instant case is quite similar to *Guest,* in which the defendant pleaded guilty to conspiracy to distribute marijuana and additional charges against him involving cocaine were dismissed. *Id.* at 578. The Tenth Circuit affirmed the district court's decision to include the amounts of cocaine distributed by the defendant as relevant conduct for sentencing purposes. *Id.* at 579.

▪ Of course, our holding that the guidelines permit a sentencing court to consider transactions such as those charged

against Legard in Counts V and VI in a proper case does not resolve the question of whether the instant case *is* a proper case. That is, the question remains whether these two specific transactions were part of the same course of conduct or common scheme or plan as the offense of conviction—the conspiracy. This question is normally subject to review under the deferential "clearly erroneous" standard because "the district court is obviously in the best position to determine what constitutes relevant conduct." *Lokey,* 945 F.2d at 839–40; *see also United States v. Cockerham,* 919 F.2d 286, 289 (5th Cir.1990) (finding that relevant conduct analysis is "primarily factual, raising no substantial issues of law"). Legard's failure to object to the PSR or at the sentencing hearing, however, means that we may review the district court's ruling only for plain error. *United States v. Pofahl,* 990 F.2d 1456, 1479 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 266, 126 L.Ed.2d 218, *and cert. denied,* —— U.S. ——, 114 S.Ct. 560, 126 L.Ed.2d 460 (1993). Plain error is error so obvious and substantial that failure to notice it would affect the fairness, integrity, or public reputation of the judicial proceedings and would result in manifest injustice. *Id.*

We find no plain error here. We have said that "[q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." *United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991). In the absence of any objection, the district court simply adopted the recommendation of the probation officer in the PSR that all transactions charged in Counts II through VI were relevant conduct. Had Legard objected, the district court could have resolved this question of fact at sentencing. The district court did not commit plain error in attributing the transactions charged in Counts V and VI to Legard for sentencing purposes.

### 2. *Sufficiency of the Evidence as to Quantity of Drugs*

Almost as an afterthought, Legard argues that the quantity of drugs involved in the Count V transaction should not be counted

against him because the government failed to prove the precise amount of cocaine base involved. The PSR simply lists the total amount of cocaine base involved in the transactions charged in Counts II, V, and VI (15.32 grams). Again, Legard's failure to object at sentencing to the factual determination regarding the quantity of cocaine base he distributed prevents him from raising such objection now absent plain error. Because the quantity of cocaine base distributed by Legard is "a question of fact that the district court resolved at sentencing without objection, we refuse to reach the merits of his claim." *United States v. Sparks,* 2 F.3d 574, 589 (5th Cir.1993) (citation omitted), *petition for cert. filed* (U.S. Nov. 12, 1993) (No. 93–6720).

### 3. *Consideration of the Transaction Charged in Count II as Involving Cocaine Base*

The issue perhaps most hotly contested by the parties is whether it was proper for the sentencing court to consider the substance involved in the Count II transaction as cocaine base rather than cocaine hydrochloride. Count II of the indictment charged Legard and McCaskey with distribution of approximately one-fourth of an ounce of cocaine hydrochloride on or about November 4, 1991. The substance involved in that transaction, however, was later determined by the government to be cocaine base. The prosecution made no effort to correct the error, as it might have done by filing a superseding indictment, but instead simply notified the defendants just prior to sentencing of its intent to prove that the Count II substance was actually cocaine base. We note, however, that the defendants had notice of this possibility at least as early as July 14, 1992, as revealed by their motion for a continuance filed on that date. Offenses involving cocaine base are treated much more severely under the guidelines than offenses involving cocaine hydrochloride. *See* U.S.S.G. § 2D1.1(c).

Legard argues that the district court violated his due process rights by considering the Count II substance as cocaine base instead of cocaine hydrochloride. He also argues that the district court's action consti-

tutes reversible error under the doctrine of judicial estoppel. Finally, he argues that the district court's finding that the substance was in fact cocaine base was based on erroneously admitted scientific evidence. Because McCaskey was also sentenced as though the Count II substance were cocaine base rather than cocaine hydrochloride, Legard's arguments are pertinent to him as well.

### a. *Due Process*

█ First, Legard argues that his Fifth Amendment due process rights were violated by the change in the government's position regarding the composition of the substance involved in the Count II transaction. Certainly a criminal defendant must be given adequate notice of the charge he is to defend. *Lokey*, 945 F.2d at 832. A defendant's conviction must be reversed if the defendant establishes that the evidence offered by the government at trial varied from what the government alleged in the indictment and the variance prejudiced the defendant's substantial rights. *United States v. Jackson*, 978 F.2d 903, 911 (5th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 2429, 124 L.Ed.2d 649, *and cert. denied*, — U.S. ——, 113 S.Ct. 3055, 125 L.Ed.2d 739 (1993). Legard contends that the same rules should apply in the sentencing context, arguing that the government effectively induced him to plead guilty on false representations that Legard would be held accountable for a conspiracy to distribute cocaine hydrochloride rather than cocaine base.

█ We disagree with Legard's due process argument. In the first place, "[c]onsideration of relevant conduct in the selection of a defendant's sentence within the range of permissible punishment established by Congress for his offense of conviction is not the equivalent of prosecuting the defendant for an offense additional to his offense of conviction." *United States v. Hoster*, 988 F.2d 1374, 1378 (5th Cir.1993). Thus, if the government promises not to prosecute a defendant for certain offenses in exchange for a guilty plea to a different offense, the sentencing court may nevertheless consider the relevant but uncharged conduct as long as the punishment selected is within the statutory

range for the offense of conviction. *Id.; United States v. Kinder*, 946 F.2d 362, 367 (5th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1677, 118 L.Ed.2d 394, *and cert. denied*, — U.S. ——, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992). Legard does not contend that his sentence exceeds the statutory range for the offense of conspiracy to distribute cocaine hydrochloride. Another difficulty with Legard's position is that at no point in the proceedings below did he seek to withdraw his guilty plea. This failure notwithstanding, he now claims that we should remand his case for resentencing on the basis of a set of assumptions apparently contrary to the facts, or, in the alternative, vacate his guilty plea.

█ Even granting that "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause," *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion); *see also United States v. Anderson*, 987 F.2d 251, 257 (5th Cir.) ("Due process only requires adequate notice of the possibility that a defendant's sentence will be based on quantity."), *cert. denied*, — U.S. ——, 114 S.Ct. 157, 126 L.Ed.2d 118 (1993), we do not believe that fundamental fairness is violated by imposition of a sentence based on the true nature of a defendant's conduct, at least under the circumstances of this case. The defendants' motion for a continuance filed July 14, 1992, reflected their awareness significantly in advance of sentencing that the government's tests revealed that cocaine base rather than cocaine hydrochloride might have been involved in the case. Legard argues that he should be entitled to rely upon the government's "positive representations" that he would be sentenced only according to the letter of the indictment; the plea agreement signed by Legard and his attorney, however, contains no such representation, and furthermore recites that the statements set forth in the agreement "represent defendant's entire agreement with the Government." It is settled in this circuit that a sentencing court is not bound by the quantity of drugs mentioned in an indictment, *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989), nor

**378**

is it bound by a stipulation as to quantity entered into by the defendant and the prosecution if other information indicates a higher quantity. *United States v. Garcia*, 902 F.2d 324, 326–27 (5th Cir.1990). We therefore find it difficult to credit Legard's claim that he relied on the quantity or type of drugs specified in the indictment in pleading guilty, particularly in light of the fact that he never attempted to withdraw his plea. His due process claim is without merit.

### b. *Judicial Estoppel*

Next, Legard argues that the decision to sentence him as though the Count II transaction involved cocaine base violates principles of judicial estoppel. This doctrine "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken by him in the same or some earlier legal proceeding." Rand G. Boyers, Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw.U.L.Rev. 1244, 1244 (1986); *cf.* Mark J. Plumer, Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield*, 55 Geo.Wash.L.Rev. 409, 435 (1987) ("Judicial estoppel is properly defined as a bar against the alteration of a factual assertion that is inconsistent with a position sworn to and benefited from in an earlier proceeding."). The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from "playing fast and loose" with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment. Boyers, *supra*, at 1245. We have recognized the applicability of this common law doctrine in this circuit. *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988). Generally the doctrine applies to prevent a party from contradicting his own sworn statements. *Id.* Legard argues that the government should be estopped from asserting at sentencing that the substance involved in the Count II transaction was cocaine base after the indictment alleged that the substance was cocaine hydrochloride.

The government makes several responses to Legard's judicial estoppel argument. Among these are the arguments that the

doctrine should not apply in criminal cases and that Legard waived the doctrine by failing to object. *See United States v. Kattar*, 840 F.2d 118, 129–30 n. 7 (1st Cir.1988) ("[A]s far as we can tell, th[e] obscure doctrine [of judicial estoppel] has never been applied against the government in a criminal proceeding."). We address the government's second argument first, mindful as ever that we will not review alleged errors raised for the first time on appeal absent plain error. *United States v. Ayers*, 946 F.2d 1127, 1131 (5th Cir.1991) (citing Fed.R.Crim.P. 52(b)). Plain error is error that is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

The district court's failure to prevent the prosecution from changing its position regarding the Count II substance, based on an obscure doctrine that has apparently never been applied in a criminal case, and without any objection from the defense, is not an error "so obvious and substantial" as to rise to the level of plain error. In the civil context, we have strictly required litigants to raise judicial estoppel according to the pleading requirements governing affirmative defenses under Federal Rule of Civil Procedure 8(c). *United States ex rel. Am. Bank v. C.I.T. Constr. Inc.*, 944 F.2d 253, 258–59 (5th Cir.1991). We indicated that, "[a]bsent a flagrant threat to the judicial process," this type of waiver will not be disregarded on appeal. *Id.* at 258. Similarly, Legard's complete failure to raise judicial estoppel below requires him to present an "extraordinary case," *id.*, if we are to overlook his waiver.

Legard has not demonstrated that this is an extraordinary case in which his waiver should be excused. Our opinion in *C.I.T. Construction* reflects that it is the "risk of inconsistent court determinations" that is the primary "threat to the judicial process" that might justify our disregard of a waiver of a judicial estoppel argument. *Id.* at 258–59; *see also* Plumer, *supra*, at 434 ("The purpose of judicial estoppel ... is to protect the integrity of a court's internal processes and thereby to prevent abuse of the judicial process by unscrupulous litigants. Thus its primary concern is with courts' processes, not

parties' rights."). Assuming without deciding that judicial estoppel can apply to the government in criminal cases, we believe that the underlying purposes of the doctrine are the same in both civil and criminal litigation—to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants. Cases have suggested that the integrity of the judicial process is safeguarded mainly by preventing a party from abandoning a position he "successfully maintained" in a prior proceeding or earlier in the same proceeding. *C.I.T. Constr.*, 944 F.2d at 258 (citing *US-LIFE Corp. v. United States Life Ins. Co.*, 560 F.Supp. 1302, 1305 (N.D.Tex.1983)); *see also* 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4477 (1981) (identifying the scenario addressed by judicial estoppel as "the prospect that an adept litigant may succeed in proving a proposition in one suit, and then succeed in proving the opposite in a second"). The mere fact that a United States Magistrate Judge signed the criminal complaint charging the defendants with conspiracy does not suggest that the government ever "successfully maintained" that the defendants were distributing cocaine hydrochloride rather than crack cocaine in the Count II transaction. Although the prosecution's conduct in this case was perhaps less than exemplary, it was not so egregious that we may disregard Legard's failure to raise his judicial estoppel argument before the district court at the appropriate time. We hold that Legard has waived his challenge based on judicial estoppel. Neither his due process claim nor his judicial estoppel claim entitles him to have his guilty plea vacated.

### c. *Reliability of Scientific Evidence Used to Prove the Composition of the Count II Substance*

■ Legard challenges the sentencing court's factual finding that the substance distributed in the Count II transaction was cocaine base rather than cocaine hydrochloride. The government concedes that Legard preserved this issue for review by proffering his own testimony that the substance was in fact cocaine hydrochloride. We review the sentencing court's findings of fact for clear error. *Buckhalter*, 986 F.2d at 879.

The evidence in support of the sentencing court's finding may be summarized as follows. The arresting officer, Agent Chad Scott, testified at the sentencing hearing that he received crack cocaine from Legard and McCaskey during the transaction charged in Count II. This testimony was based, not on chemical analysis, but on Agent Scott's personal knowledge of the different appearances of cocaine hydrochloride and cocaine base. He admitted that he had no training in the chemical differences between the two substances. The only other government witness at sentencing was forensic scientist Charles Butler, an employee of the Louisiana State Police Crime Lab at Baton Rouge. He testified that the substance received by Agent Scott during the Count II transaction was cocaine base, based on tests conducted using a machine called a Fourier Transform Infrared Spectrophotometer (FTIR).

Legard attempts to undermine the sentencing court's finding that the substance involved in the Count II transaction was cocaine base by attacking the scientific evidence introduced by the government. The defendants' attorney cross-examined Butler at length about the use of the FTIR. It appears that the FTIR identifies an unknown substance by subjecting it to a laser beam and creating a graph of the spectrum thereby produced; the graph may then be compared to reference graphs derived from known substances to determine the composition of the unknown substance. The cross-examination revealed that lab technicians calibrated the FTIR every morning by testing a reference polystyrene film and comparing the graph produced by the FTIR to a reference graph provided by the manufacturer of the FTIR. The cross-examination also revealed that the substance involved in the Count II transaction was identified as cocaine base by testing it in the FTIR and comparing the graph produced by the machine to a reference graph derived from one of several unidentified reference books. In sum, Legard argues that the sentencing court abused its discretion regarding the introduction of the evidence derived from the

FTIR testing because the foundation for the admissibility of that evidence was inadequate as a matter of law.

■ We note first that the appropriate standard regarding the admissibility of evidence at sentencing is substantially lower than that governing admissibility at trial. Specifically, "[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant evidence without regard to its admissibility under the rules of evidence at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). Certainly the "austere" *Frye* test, to which Legard alludes in his brief and which has been held by the Supreme Court to be superseded by the adoption of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. —, — – —, 113 S.Ct. 2786, 2792–94, 125 L.Ed.2d 469 (1993), has no application in sentencing. Thus, the government's failure to establish that the FTIR test is sufficiently established to have gained general acceptance in the particular field to which it belongs is not fatal.

■ In our opinion, the sentencing court's acceptance of Butler's testimony based on the FTIR results was not clearly erroneous. The fact that Butler was unable to produce a certificate from the manufacturer regarding the accuracy of the reference polystyrene film used to calibrate the machine does not render the test unreliable. The reliability of the test and identification was sufficiently established by Butler's testimony that the FTIR machine was tested and calibrated on a daily basis using reference materials provided by the machine's manufacturer and that the machine showed the Count II substance to be cocaine base. It may be noted that scientific certainty is not absolutely required for a fact-finder to determine the chemical composition of an alleged controlled substance, even at a defendant's criminal trial. *See United States v. Uwaeme,* 975 F.2d 1016, 1019 (4th Cir.1992); *United States v. Schrock,* 855 F.2d 327, 334 (6th Cir.1988); *United States v. Osgood,* 794 F.2d 1087, 1095 (5th Cir.), *cert. denied,* 479 U.S.

994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986). Particularly under the lower "sufficient indicia of reliability" standard that governs at sentencing, the testimony of Butler based on the FTIR results was admissible to prove the composition of the Count II substance. Considering this evidence in conjunction with that presented in Agent Scott's testimony, we conclude that the district court did not clearly err in determining that the substance involved in the Count II transaction was in fact cocaine base.

### B. *Supervised Release*

Legard correctly maintains, and the government concedes, that the district court exceeded the statutory maximum in imposing a five-year term of supervised release. The defendants pleaded guilty to violations of 21 U.S.C. § 846, and as a result they were subject to the penalties found in 21 U.S.C. § 841(b)(1)(C). Section 841(b)(1)(C) provides for a maximum sentence of twenty years imprisonment, and so violation of that statute constitutes a Class C felony under 18 U.S.C. § 3559(a)(3). Three years is the maximum authorized term of supervised release for a Class C felony under 18 U.S.C. § 3583(b)(2). *United States v. Gracia,* 983 F.2d 625, 630 (5th Cir.1993). Because 21 U.S.C. § 841(b)(1)(C) requires a minimum of three years supervised release, there is no need for a new sentencing proceeding. In the interest of judicial economy, our proper course is to modify the district court's judgments to impose the statutorily mandated three-year term of supervised release on both defendants. *Id.*

### C. *Ineffective Assistance of Counsel and Conflict of Interest*

■ Finally, Legard claims that his trial counsel rendered him ineffective assistance at sentencing by favoring McCaskey's defense to Legard's prejudice. "In this circuit, the general rule is that a claim of ineffective assistance of counsel cannot be resolved on direct appeal unless it has first been raised before the district court." *United States v. Garza,* 990 F.2d 171, 178 (5th Cir.) (quoting *United States v. Kinsey,* 917 F.2d 181, 182 (5th Cir.1990)), *cert. denied,* — U.S. —,

114 S.Ct. 332, 126 L.Ed.2d 278 (1993). Exception to this general rule is made only if the record is sufficiently developed with respect to the merits of the claim. *Id.* Legard argues that the record is sufficiently developed to demonstrate that his counsel was ineffective because there was an actual conflict of interest in the representation of both him and McCaskey by a single attorney.

The standards governing claims of ineffective assistance of counsel and conflict of interest are well-known. A defendant claiming ineffective assistance of counsel must show that counsel's actions were deficient, falling below an objective standard of reasonableness, and that the defendant was prejudiced as a result. *United States v. Gipson,* 985 F.2d 212, 215 (5th Cir.1993). An actual conflict of interest exists whenever one defendant stands to gain significantly by advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing. *United States v. Abner,* 825 F.2d 835, 842 (5th Cir.1987) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)). Prejudice is presumed with respect to a defendant's ineffective assistance of counsel claim only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected counsel's performance. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984)). "Adverse effect" is a less onerous standard, of course, than the outcome-determinative "prejudice" standard. *Abner,* 825 F.2d at 843.

Legard's conflict of interest claim is based, in essence, on one action by his and McCaskey's joint counsel. At sentencing, counsel submitted to the court a memorandum arguing that the government had failed to show that McCaskey knew that the substance involved in the Count II transaction was cocaine base instead of cocaine hydrochloride. For whatever reason, counsel submitted this memorandum on McCaskey's behalf alone; the government speculates that this argument would have been less plausible if advanced on Legard's behalf because of his two prior transactions in cocaine base as alleged in Counts V and VI. Legard contends that the "clear message" of counsel's memorandum was that McCaskey did not know that the Count II substance was cocaine base, but Legard did. Legard also argues that he suffered actual and presumed prejudice to the extent that counsel failed to preserve errors and protect his right to appeal.

We are not prepared to say that the record is sufficiently developed at this stage in the proceedings to allow meaningful appellate review of Legard's ineffective assistance of counsel claim or for us to determine whether there was an actual conflict of interest. Therefore, we decline to resolve these issues on appeal. Legard remains free to pursue his claim for ineffective assistance of counsel in accordance with 28 U.S.C. § 2255. *Garza,* 990 F.2d at 178; *see also United States v. Higdon,* 832 F.2d 312, 313–14 (5th Cir.1987) (noting that review of claims of inadequate representation are rarely considered for the first time on direct appeal because no opportunity existed in the district court to develop the record on the merits of the allegations), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988).

## IV. BOBBY RAY MCCASKEY

The sentencing court adopted McCaskey's PSR in determining his sentence. The PSR recommended a finding of a base offense level of twenty-six, based on the finding that the cocaine base distributed in the Count II transaction and the cocaine hydrochloride distributed in the Count III and IV transactions should be attributed to McCaskey as relevant conduct under § 1B1.3 of the sentencing guidelines. The PSR also recommended a two-level reduction for acceptance of responsibility. Based on a total offense level of twenty-four and McCaskey's criminal history category of III, the PSR concluded that the appropriate guideline sentencing range was sixty-three to seventy-eight months imprisonment. The sentencing court adhered to the guideline sentencing range in sentencing McCaskey to sixty-five months imprisonment.

At the sentencing hearing, counsel filed on McCaskey's behalf a memorandum arguing that McCaskey should be sentenced as

though the Count II transaction involved cocaine hydrochloride instead of cocaine base because McCaskey did not know that the substance distributed was cocaine base and had no intent to distribute cocaine base. The sentencing court implicitly rejected this argument by adopting the PSR. McCaskey renews his argument on appeal.

A brief review of the evidence regarding the Count II transaction is in order. At the sentencing hearing, the arresting agent, Officer Chad Scott, testified that he and Legard met McCaskey at a bar called Nanny's Place in Hammond, Louisiana. Legard got out of the car in which he and Officer Scott were sitting, went to McCaskey, got the drugs, and returned to the car where Officer Scott paid him $350. Legard then left with McCaskey. Officer Scott testified that he recognized the substance as cocaine base and that he had negotiated the purchase with McCaskey. The PSR, derived from McCaskey's own account of the transaction, seems to vary from Officer Scott's account. According to the PSR, an undercover agent approached Legard and McCaskey seeking to buy cocaine. The defendants agreed to sell him some, because they had a friend from whom they had purchased cocaine before. Legard was the one who procured the cocaine and brought it to McCaskey. According to the PSR, "McCaskey took some cocaine from the bag for his own use and then sold the remaining cocaine to the undercover agent." McCaskey did not object to this portion of the PSR.

We repeat the standards for holding a defendant responsible for relevant conduct under the guidelines. A defendant shall be sentenced according to "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, ... or that otherwise were in furtherance of the offense." U.S.S.G. § 1B1.3(a)(1). Conduct for which a defendant is "otherwise accountable" includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant. U.S.S.G. § 1B1.3 cmt. n. 1. The defendant shall also

be sentenced according to his acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Again, "in a drug distribution case, quantities *and types* of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3 cmt. (backg'd) (emphasis added). We apply the "clearly erroneous" standard of review to the sentencing court's determination of relevant conduct. *Lokey,* 945 F.2d at 839–40.

McCaskey relies heavily on the case of *United States v. Rivera,* 898 F.2d 442 (5th Cir.1990). In that case, defendant Elias Rivera pleaded guilty to distributing .28 grams of heroin; he was sentenced, however, on the basis of 224.47 grams of heroin. *Id.* at 445. The larger amount was based on the total amount of heroin involved in a large conspiracy. At sentencing, Rivera objected to the determination that he should be sentenced according to the total amount of heroin involved in the conspiracy because he had no knowledge of any heroin distribution by his co-defendants. *Id.* We vacated Rivera's sentence because the record contained "no factual finding that Rivera was part of a jointly-undertaken scheme to distribute heroin with any of his co-defendants other than Perez [who made the .28 grams of heroin available to Rivera]." *Id.* at 446. In the absence of findings that Rivera knew or should have known of the heroin distributions by his co-defendants, and in the absence of a finding of a joint undertaking or plan, we held that Rivera's sentence could not be based on amounts of heroin other than those he personally distributed. *Id.*

*Rivera* is inapposite because the record in the instant case does contain evidence that McCaskey was personally involved in the transaction for cocaine base. The sentencing court adopted the recommended findings of fact in the PSR to which McCaskey did not object, and those findings included McCaskey's account of the Count II transaction. McCaskey's account indicated that he was personally involved in the transaction and in

fact used some of the substance that he and Legard were distributing on that occasion. In light of the evidence available to the sentencing court, we are in no position to hold that the determination that McCaskey's distribution of cocaine base was relevant conduct was clearly erroneous.

## V. CONCLUSION

The sentences imposed by the district court are MODIFIED to impose three-year terms of supervised release on both Legard and McCaskey. As so modified, the sentences are AFFIRMED and the matters are returned to the district court for correction of the judgments and commitment orders.