UNITED STATES of America,
Plaintiff–Appellee,

v.

Anthony BUCKHALTER and Clarence
Maston, Defendants–Appellants.

No. 91–7333.

United States Court of Appeals,
Fifth Circuit.

March 11, 1993.

Rehearing Denied April 6, 1993.

Stephen L. Smith, Gulfport, MS, for Anthony Buckhalter.

John Collette, Jackson, MS, for Clarence Maston.

Ruth R. Morgan, Asst. U.S. Atty., and George Phillips, U.S. Atty., Biloxi, MS, for the U.S.

Before DAVIS and JONES, Circuit Judges, and PARKER, District Judge.[1]

ROBERT M. PARKER, District Judge:

The two Appellants were jointly tried before a jury for conspiracy to possess and possession with intent to distribute cocaine. Buckhalter was acquitted of all but the conspiracy charge and was given a thirty-six (36) month prison term. Maston was found guilty of five counts of possession, as well as the conspiracy count, and was sentenced to life without parole. We find no merit in any of the points of error presented in this appeal, and therefore AFFIRM the convictions and sentences.

## FACTS

Defendant Maston was suspected by government agents of organizing and supervising a crack cocaine distribution network out of Gulfport, Mississippi. Defendant Buckhalter was suspected as one of several people selling cocaine for Maston. Michael Johnson, a confidential informant (CI), testified at trial that he made two undercover drug purchases from Maston, in which Buckhalter participated, at a local establishment named Skipper's Lounge. Another CI, David Alan Clark, also bought cocaine from Maston at Skipper's Lounge. This transaction was taped, and the tape was admitted into evidence and played for the jury. Drug ledgers, powder cocaine and rock cocaine were seized pursuant to a search warrant executed at Skipper's Lounge after the undercover drug buys. The Defendants stipulated at trial that all the drugs bought and seized were controlled substances.

Kenney Rupert testified that he had been involved in Maston's drug operation. He described the operation from receipt of drugs from various suppliers through ultimate street sales, including the respective roles of the two Appellants.

## SEVERANCE

■ Buckhalter alleges that the trial court erred in denying Buckhalter's motion to sever his trial from co-defendant Maston's. A decision whether to sever the trials of persons who are indicted together is within the discretion of the trial court. That decision will not be disturbed unless the defendant can demonstrate, one, "compelling prejudice" against which the trial court was unable to afford protection, *U.S. v. Massey*, 827 F.2d 995 (5th Cir.1987), and, two, the prejudice occasioned by the ruling outweighed the government's interest in economy of judicial administration. *United States v. Martinez–Perez*, 941 F.2d 295 (5th Cir.1991).

■ Buckhalter complains of the testimony of Katherine Marchant and Leslie Lord, which concerned a positive result on

---

1. Chief Judge of the Eastern District of Texas, sitting by designation.

a drug screening test taken by Maston in connection with his employment. The witnesses also related comments made by Maston that he was involved in making and selling crack cocaine with "another guy," but there was no implication in their testimony that the other guy was Buckhalter. The Marchant/Lord testimony concerned only Maston, and did not incriminate Buckhalter.

Buckhalter objected to the testimony, saying that the statements amounted to a co-defendant confession in violation of the *Bruton* rule. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) established that admission of a codefendant's confession that implicates defendant at a joint trial violates defendant's Constitutional right to confrontation, if the codefendant does not take the stand. However, if a such a statement does not implicate the co-defendant, no serious *Bruton* problem is presented. *United States v. Greer*, 939 F.2d 1076, 1096 (5th Cir.1991). We find no *Bruton* violation in the record of this trial, because the statements attributed to Maston by the witnesses did not implicate Buckhalter.

■ Further the Court gave the jury instructions both during testimony and at the end of the trial to consider the case of each defendant separately and individually, and to apply the evidence only to the defendant to which it related. The jury's not guilty verdicts as to defendant Buckhalter on counts 3, 4, 5, and 6 show that they followed the lower court's instructions and in fact considered the evidence as to each defendant separately. "[A]cquittals as to some defendants on some counts support an inference that the jury sorted through the evidence and considered each defendant and each count separately." *United States v. Ellender*, 947 F.2d 748, 755 (5th Cir. 1991).

Based on the foregoing, we find that the district court did not abuse its discretion in denying Buckhalter's motion to sever his trial from that of co-defendant Maston.

## IN COURT EYEWITNESS IDENTIFICATION

Buckhalter moved to suppress the in court identification of Buckhalter by CI Michael Johnson. Buckhalter now challenges the district court's denial of his motion as error.

Johnson was allowed to make an in court identification of Buckhalter, testifying that Buckhalter was present and assisted Maston during drug sales to the CI. On cross examination Johnson admitted that he could not identify Buckhalter to agents on the day of the drug buy. The initial description he gave was of a man, five foot nine inches to five foot ten inches tall and of medium build. Buckhalter is six feet three inches tall and weighs two hundred and thirty pounds. Johnson's description of Buckhalter's hair and facial hair was accurate. Later, Johnson positively identified Buckhalter from a single picture shown to him by a government agent.

This Court set out the standard for reviewing district court decisions concerning an allegedly tainted in court identification in *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir.1990):

> In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) the Supreme court announced the now familiar rule that a conviction based on an eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. As this Court has acknowledged, the admissibility of identification evidence is governed by a two-step analysis. Initially, a determination must be made as to whether the identification procedure was impermissibly suggestive. Next, the court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.

■ First, we find that showing a single photograph of the suspect to Johnson, after Johnson said he could not identify the man, was impermissibly suggestive. *Herr-*

*era v. Collins,* 904 F.2d 944, 946 n. 2 (5th Cir.1990).

Second, we examine the totality of circumstances, focusing on the indicia of reliability of the in court identification, to determine if the suggestiveness required exclusion of the identification. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Johnson testified that he had known Buckhalter slightly for several years, and had seen and talked to him at the car repair shop where Johnson worked, so this was not a case of a brief encounter with a total stranger. Further, on an audio tape of the meeting in question a voice identified as Maston's says, "Buck, get an ounce, need an ounce." Testimony from Johnson, as well as others, established that Buckhalter was known by the nickname "Buck." We find, under the totality of the circumstances, that there is not a substantial likelihood that showing Buckhalter's photograph to Johnson led to irreparable misidentification.

## REMOVAL OF A JUROR

Both Appellants urge us to reverse and remand this case for a new trial because the district court abused its discretion in removing a juror, and substituting the alternate after the jury was sworn.

During voir dire, the judge asked the jury panel if anyone had "ever been involved in a criminal matter in any court that would concern yourself or a member of your family or a close friend, either as a defendant, a witness or a victim." Larry Johnson made no response to the judge's question. The jury, including Johnson, was selected, sworn and empaneled. The court then recessed for the night.

The next morning, before opening statements, the government moved to strike Johnson. One of the government's agents thought he recognized the juror, but could not place him. Based on the agent's recognition, the government ran a criminal background check on the juror. The check revealed that he had been arrested ten years earlier by the Harrison County Sheriff's Office, charged with defrauding the Mississippi Employment Security Commission, and released on bond after booking. No information was available from which to determine whether the charge was a felony or a misdemeanor, or how the case was resolved. Both defense attorneys stipulated that the individual who had been arrested was the same person as the juror. The Court advised the parties that if it was necessary to call the juror in as a witness and question him about the issue, the Court felt that the juror would be irreparably tainted, and would have to be discharged. Neither Appellant took issue with the court's position or asked to call the juror for further questioning. Based on the information available, the court held that the juror's failure to disclose his earlier arrest by the law enforcement agency that was providing a number of witnesses in this case created an inference of bias, and discharged Johnson. He was replaced by the alternate juror who had already been selected and sworn. The Court then overruled Defendants motion for mistrial. After the Court excluded the juror and overruled the motion for mistrial, Defendants asked that the juror be put on the stand and questioned concerning the alleged arrest to develop the record for appeal. The juror denied ever having been arrested or taken to jail or appearing in court, while admitting that there was an instance where the Mississippi Employment Security Commission claimed he owed them some money. The juror further testified that he had no hard feelings toward the Harrison County Sheriff's Department.

■ The Supreme Court has provided us guidance in reviewing District Court rulings on challenges to jurors who do not candidly answer questions put to them during *voir dire.* In *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) a party sought a new trial, having found out after the verdict was returned that a juror failed to reveal information in response to a *voir dire* question. The Court held, that to obtain a new trial in such a situation, a party must demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a

correct response would have provided a valid basis for a challenge for cause. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. at 556, 104 S.Ct. at 850. The proper inquiry for this Court in reviewing the ruling is whether the district court abused its discretion in dismissing the juror. The District Court's judgment must be guided by the underlying purpose of *voir dire* and jury selection, that is, to provide the parties the benefit of an impartial trier of fact. *Id.* at 550, 104 S.Ct. at 847. In criminal cases, doubts about the existence of bias should be resolved against permitting the juror to serve. *United States v. Nell,* 526 F.2d 1223, 1230 (5th Cir.1976).

█ The Court made its decision, based on the rather thin evidence available for consideration. Although the Government did not prove actual bias on the part of the juror, the district court was well within its discretion to conclude that the juror's concealment of a prior arrest made by a law enforcement agency that was providing witnesses for the prosecution amounted to implied bias. *U.S. v. Scott,* 854 F.2d 697 (5th Cir.1988). The Appellants offered nothing to rebut the Government's assertion that the juror had concealed his prior arrest record, until after the Court had ruled. Based on the conflicting evidence in the record before us (the testimony from a Government agent that the juror had an arrest record, and the juror's denial of the fact without further explanation) we cannot say that the Court abused its discretion in dismissing the juror.

## BUCKHALTER'S SENTENCE

Buckhalter was found guilty by the jury of Count I of the Indictment which charged that "from an unknown date, but at least as early as 1988 and continuing through March 1991, [Buckhalter and his codefendants] conspired to distribute and possess with intent to distribute cocaine and approximately 50 grams or more of cocaine base," in violation of 21 U.S.C. § 846. The guideline for a violation of 21 U.S.C. § 846 is found at U.S.S.G. § 2D1.4(a) which provides that a conviction of a conspiracy to commit any offense involving a controlled substance, will be assigned to the same offense level as if the object of the conspiracy had been completed. The controlling guideline is therefore U.S.S.G. § 2D1.1 which addresses unlawful manufacturing, importing, exporting, or trafficking of drugs, including possession with intent to commit these offenses. Pursuant to the Drug Quantity Table in U.S.S.G. § 2D1.1(c), an enterprise involving 15 kilograms or more of cocaine base has a base level offense of 42. At the sentencing hearing, the district court found that the 16.9 kilograms, as used by the Probation Officer to determine the relevant conduct to compute the guidelines, was appropriate. Buckhalter's objection in the district court and his position on appeal amounts to a claim that the evidence was insufficient to support the district court's finding that the conspiracy involved 16.9 kilograms of cocaine base.

█ Relevant conduct may extend beyond that necessary for the finding of guilty. "Establishing this conduct does not require proof beyond a reasonable doubt. It only requires factual findings by the sentencing court by a preponderance of the evidence, which are subject to the 'clearly erroneous' standard of review on appeal." *U.S. v. Mourning,* 914 F.2d 699, 706 (5th Cir.1990).

Government's witness, Kenny Rupert, testified at trial that beginning in 1988 or 1989 he bought and cooked and sold cocaine with Appellants. He had extensive first hand knowledge of the suppliers, the times, locations and amounts of drugs involved in every phase of the distribution business. Appellants complain that his testimony was not specific enough on the dates or amounts of drugs involved to meet the specificity requirements set out in *United States v. Phillippi,* 911 F.2d 149 (8th Cir.1990), cert. denied 498 U.S. 1036, 111 S.Ct. 702, 112 L.Ed.2d 691 (1991). The Fifth Circuit has never adopted the *Phillippi* standard, and the case before us does not present a question that requires us to decide whether or not to adopt it. Phillippi was found guilty of possession with intent to distribute two kilograms of cocaine. The offense date was in February 1988. A

**880**

DEA informant testified at trial concerning the drugs she had sold to Phillippi during 1986 and 1987. At sentencing, the district court, relying on that testimony, found that Phillippi had possessed at least ten kilograms of cocaine through transactions which were part of the same course of conduct as the offense of conviction. The evidence before the court concerned drug deliveries that could have occurred as remotely as two years prior to the charged offense. Additionally, the witness could only guess about the amount of drugs delivered based on the size of the outside of heavily wrapped packages. The Eighth Circuit held that the Court erred in including the kilograms from these deliveries in calculation of Phillippi's sentence because the evidence did not clearly establish the dates on which the deliveries were made or the amounts of drugs delivered. *U.S. v. Phillippi*, 911 F.2d 149, 151 (8th Cir.1990).

The testimony in the present case clearly established that the drug transactions occurred within the time frame set out in the indictment for the conspiracy. The testimony also established, within a specific range, the amount of drugs involved in the transactions. *Phillippi* sets limits on the specificity required of evidence that is used to establish conduct relevant to a drug possession charge. Clearly, evidence that a transaction occurred during the conspiracy is specific enough as to date to be considered in sentencing the convicted conspirator. Likewise, testimony couched in terms of a range of amounts allows the court to fairly calculate the amounts involved by using the lower end of the range. Therefore the Court's determination that the conspiracy involved 16.9 kilograms of cocaine is not clearly erroneous.

Buckhalter also complains that the district court denied him a downward departure on the basis that he was a minor participant, that is, a participant who is less culpable than most other participants. We hold that the district court's decision in this respect is well supported by the record.

### MASTON'S SENTENCE

Maston also asserts that the evidence was not sufficient to support the district court's finding that in excess of 16 kilograms of drugs were involved in this case. His argument is essentially identical to Buckhalter's. Based on the foregoing discussion, we hold that the district court's finding in regard to the amount of drugs is not clearly erroneous.

Maston next argues that the sentencing guidelines in effect in 1988 should have been used in calculating his base offense level instead of the amended guidelines that were in effect in 1990. He alleges the use of the 1990 amendments to the guidelines violated the Ex Post Facto Clause of the United States Constitution.

This issue is settled in the Fifth Circuit. A conspiracy is a continuing offense. So long as there is evidence that the conspiracy continued after the effective date of the guidelines, the Ex Post Facto Clause is not violated. *U.S. v. Devine*, 934 F.2d 1325, 1332 (5th Cir.1991). The evidence showed that the conspiracy in question continued until March 1991 when Maston was arrested. The district court's use of the amendments in effect at the time of the conclusion of the conspiracy did not violate the Ex Post Facto Clause.

For the foregoing reasons, we AFFIRM the convictions and sentences of Buckhalter and Maston.