**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sheila SMITH and Byron Vandrea Phillips, a/k/a Vincent Andrian Phillips, a/k/a Byron A. Phillips, Defendants–Appellants.**

No. 92–7614.

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1994.

Thomas E. Berg, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public

Defender, Houston, TX, for defendant-appellant Sheila Smith.

Thomas W. McQuage, Galveston, TX (Court-appointed), for defendants-appellants Byron Phillips.

Peggy M. Ronca, Paula C. Offenhauser, Asst. U.S. Attys., Gaynelle G. Jones, U.S. Atty., Houston, TX, for plaintiff-appellee.

Before JOHNSON, WIENER and DeMOSS, Circuit Judges.

WIENER, Circuit Judge:

Defendants–Appellants Sheila Smith and Byron Vandrea Phillips were convicted by a jury of three drug offenses in connection with the sale of crack cocaine to an undercover police officer. Smith and Phillips do not appeal their convictions, but both challenge their sentences. They assert that the trial court incorrectly applied the United States Sentencing Commission Guidelines (the Guidelines)[1] in calculating the quantity of crack cocaine to be considered in their sentencing. We disagree with Smith and therefore affirm her sentence, but we vacate Phillips' sentence and remand for particularized findings and for resentencing consistent with this opinion.

## I

### FACTS AND PROCEEDINGS

Testimony at trial produced the following facts: Smith and Phillips were arrested during a Houston (Texas) Police Department (HPD) undercover operation. Undercover police officers Donald DeBlanc and Sharon Pouncy were driving by a house in Houston when they were flagged down by defendant Phillips. Phillips asked, "What do you need?" Officer DeBlanc said he was looking for "six or seven rocks." Phillips replied, "I got what you need." At Phillips' instruction,

DeBlanc turned his vehicle around, got out and went to the porch of the house, on which defendant Smith was waiting. Smith opened her hand, displayed a number of crack cocaine "rocks," and advised DeBlanc to pick out what he wanted to buy. At the time, two men, Lorenzo Gene Cheney and Troy Adams, were standing on the porch or just inside the open front door. They too displayed rocks of cocaine base to DeBlanc. Phillips vouched for Smith's cocaine, saying, "We have good rocks." DeBlanc selected rocks constituting approximately 2 grams from Smith's hand and handed her a $100 bill, the serial number of which had been previously recorded.

After the sale was completed, DeBlanc, who was wearing a concealed microphone, gave the "bust" signal, and the raid team officers waiting in a nearby van converged on the house. Smith, Phillips, Cheney, and Adams fled into the house and were arrested.[2] None of the four had drugs on their persons when they were taken into custody, but police found "rocks" constituting 3.9 grams of cocaine base on the floor of the front room in the house. An HPD chemist testified that the cocaine on the floor was of a different color and purity than the cocaine Smith sold to the undercover officer, and on cross-examination the chemist agreed that the two samples could have come from different sources. The marked $100 bill that DeBlanc had used to pay Smith was found on the floor near the crack cocaine.

A jury convicted both Smith and Phillips on all three counts charged: (1) conspiracy to possess with intent to distribute crack cocaine; (2) possession with intent to distribute crack cocaine; and (3) distribution of crack cocaine. The trial court held a sentencing hearing for Smith and Phillips, during which the court took into account the total amount of cocaine base seized from the house, not just the 2 grams sold to the undercover

---

1. United States Sentencing Commission, *Guidelines Manual* (Nov. 1992).

2. Troy Adams and Lorenzo Cheney were not prosecuted by the federal government and were not involved in the trial of defendants Smith and

Phillips in the case now on appeal. Evidence at trial indicated that the State of Texas charged Cheney with a parole violation and Adams with a state drug paraphernalia violation.

officer.[3] Holding Smith and Phillips accountable for the larger amount made a significant difference under the Guidelines by producing a base offense level of 26 rather than 20. In turn, the greater base offense level resulted in longer sentences for both defendants; that is the main issue in this appeal.[4] Therefore a closer look at the sentencing process is necessary.

■ Neither Smith nor Phillips testified at trial, and neither defendant put on any evidence. The following additional facts, which were considered by the trial judge in the sentencing process, do not come from trial testimony but from the defendants' presentence investigation reports (PSRs) and from a letter written to the court by Phillips that was made a part of the record of the sentencing hearing.[5]

According to Smith's PSR, the house where the offense occurred belonged to her mother. Smith said that Adams, Cheney, and Phillips lived at the house. Smith was aware that this house was being used as a "crack house." Smith said she bought the rocks that she later sold to the undercover officer from a "source" located down the street from the house, and that she was introduced to her source by Lorenzo Cheney. Smith said that she decided to sell the crack

cocaine because she needed money to pay her light bill. She had planned to give Phillips some of the crack cocaine in exchange for his luring buyers to the residence. Smith said that after Phillips flagged down the vehicle driven by the undercover officers, Phillips informed both Smith and Cheney that an individual was interested in buying some rocks. According to Smith, the cocaine rocks found on the floor belonged to Cheney.

According to Phillips' PSR, he claims his only involvement in the offense was telling the buyer where the crack cocaine could be bought. He considers himself to have a drug problem and wants treatment. In the letter written to the court, Phillips claims that "Troy Adams and I never had drugs. We were over there trying to earn a piece of crack to smoke. Ms. Smith and Lorenzo Cheney were the drug dealers." Phillips stated that Smith and Cheney were competitors, and that the cocaine on the floor belonged to Cheney. Phillips does not say that he helped Cheney. Phillips never mentioned where he lived or who lived in the house where the offense occurred.

## II

## ANALYSIS

Smith raises two issues on appeal. She claims that the trial court erred by (1) basing

---

**3.** In the sentencing hearing the trial court referred to "all 7 grams" of cocaine found in the house, which included the 2 grams sold to the undercover officer, the 3.9 grams found on the floor near the $100 bill, and an additional 1 gram recovered from a side room of the house. The 1 gram was excluded from evidence at trial because there was no evidence to connect it to either defendant. However, the base offense level in the Guidelines is the same for 5.9 grams as it is for 6.9 grams, so it does not matter for this appeal whether the 1 gram was included for sentencing purposes. *See* U.S.S.G. § 2D1.1(c)(9) (providing that an offense involving "at least 5 grams but less than 20 grams of cocaine base" dictates a base offense level of 26). The parties' arguments deal mainly with the 3.9 grams found on the floor and whether that additional amount can be attributed to the defendants.

**4.** Other factors, such as prior criminal history, can affect a defendant's range of potential sentences under the Guidelines, but to illustrate the difference in Smith's case, the higher base offense level meant that she would serve 63 to 78 months in prison rather than 33 to 41 months. U.S.S.G. Ch. 5 Pt. A, Sentencing Table. Smith was actually sentenced to 66 months. Phillips

had a prior criminal history, which put him in a category requiring a higher sentencing range. The trial court sentenced Phillips to 114 months. However, if Phillips had been held accountable only for 2 grams rather than 5.9 grams, his sentencing range would have been 63 to 78 months. *Id.*

**5.** The court properly considered these facts even though they were not testified to at trial, because a sentencing court may properly consider any relevant information made available to it, without regard to admissibility under the Rules of Evidence, provided the information considered has sufficient "indicia of reliability." *United States v. Shacklett*, 921 F.2d 580, 584 (5th Cir. 1991); U.S.S.G. § 6A1.3(a). "Relevant conduct" attributed to a defendant under the sentencing guidelines, such as conduct of others committed during a joint criminal enterprise, does not require proof beyond a reasonable doubt, only by a preponderance of the evidence. *United States v. Buckhalter*, 986 F.2d 875, 879 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 203, 126 L.Ed.2d 160 (1993).

her sentence on the larger amount of cocaine, and (2) denying her a two-point reduction for acceptance of responsibility. Phillips raises one issue, that the trial court erred in basing his sentence on the larger amount of cocaine.

## A. Amount of Cocaine Considered in Smith's Sentencing

Smith insists that she did not possess the crack cocaine found on the floor of the house, and that it should not have been considered in her sentencing. She points to the following facts drawn from trial testimony: (1) Four persons were arrested and police officers admitted that they did not know who threw the cocaine on the floor; (2) the cocaine on the floor differed in color and purity from the cocaine Smith sold to the officer; and (3) Cheney and Adams were also seen holding cocaine rocks on the porch of the house but were not carrying any cocaine when they were arrested minutes later.

■ The quantity issue was muddied in that, during the trial, both sides mistakenly assumed that the government had to prove the *quantity* of cocaine alleged in the indictment to obtain convictions. In reality, a trial court is not bound by a jury's findings as to the quantity of drugs, and a jury finding as to quantity is unnecessary to conviction. The determination of the quantity of drugs is a *sentencing issue* necessary only to calculate a base offense level, and is a factual determination for the *court* to make.[6] But the indictment in this case, and the charge that went to the jury, stated that Smith and Phillips possessed and conspired to possess *"in excess of five grams of cocaine."* The government theorized, and argued to the jury at trial, that Smith threw the 3.9 grams of cocaine on the floor inside the house, pointing to testimony that the $100 bill paid to her by DeBlanc was found on the floor near the cocaine. After hearing this argument, the jury deliberated on a charge which stated that, to find Smith and Phillips guilty, the jury must conclude that they possessed and conspired to possess *in excess of five grams* of cocaine base. The jury returned verdicts of guilty for both defendants on all counts. The district court, in its order denying the defendants' motion for acquittal, recited the circumstantial evidence of the location of the rocks and the money on the floor, and concluded that the jury must have believed that Smith had thrown down the 3.9 grams of cocaine. "[A]lthough there is a dispute as to whether there were multiple sources of cocaine rocks, on the premises in question, on the relevant date, this jury believed that these Defendants were at least in part responsible for the presence of all or part of the drugs, and the Court agrees."

■ At the sentencing hearing four months later, all parties had become aware that the quantity of drugs attributable to a defendant is a sentencing issue rather than an element of the offense. At that hearing, however, the trial court did not make a finding as to whether Smith threw the 3.9 grams of cocaine on the floor. Instead, it held Smith accountable for the larger amount of cocaine under the theory of "relevant conduct" as set out in Guideline § 1B1.3(a)(1)(B). That section states that when a defendant participates in "jointly undertaken criminal activity,"[7] the sentencing judge should determine that defendant's base offense level by looking not only at the defendant's conduct, but also at "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *Id.* Under § 1B1.3, no matter which of the four people in the house threw the cocaine on the floor, Smith can be held accountable for that cocaine for sentencing purposes if the government proves that (1) she agreed to participate jointly in drug sales with Cheney or Adams or both, *and* (2) she could have reasonably foreseen that at least 5.9 grams of cocaine would be involved in that joint activity. As we stated in *United States v. Evbuomwan,*[8] "[t]o hold a defendant

---

6. *United States v. Jacobo,* 934 F.2d 411, 416–17 (2nd Cir.1991).

7. "Jointly undertaken criminal activity" is defined as "a criminal plan, scheme, endeavor or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3(a)(1)(B).

8. 992 F.2d 70 (5th Cir.1993).

accountable for the crime of a third person, the government must establish that the defendant agreed to jointly undertake criminal activities with the third person, and that the particular crime was within the scope of that agreement."[9]  It is not enough to find only that Smith knew or could have foreseen that others were selling drugs in the house. To hold her accountable for drugs belonging to someone else, it is necessary first to find that she agreed to undertake criminal activity jointly with the others.[10]

Smith argued at sentencing that she was in competition with Cheney and Adams for drug customers, and she claims that she did not agree to participate in any joint enterprise with them. The trial court, however, made a finding that Smith was accountable for all the cocaine found in the house as a joint participant in the drug sales occurring there:

> The Court's justification for that [finding], for purposes of your appellate scrutiny, is essentially that I think it's not persuasive to the Court that merely because she was in competition with others there at the same time, that that defies a conspiracy mentality in the sense that *all of them were there and all of them were jointly participating in the sale of drugs.* Whether one wanted the sale as opposed to another, does not belie, in this Court's perception, some accountability on the part of this defendant for any of the drugs in the house, not just the drugs she brought to the residence.

Given the deferential standard of review we afford a sentencing court,[11] our examination of this case and the applicable law leads us to conclude that the court's finding here is not clearly erroneous. The government in this case has met its burden of establishing, by a preponderance of the evidence, that Smith agreed to engage in jointly undertaken criminal activity with Cheney and Adams.[12] Although there is no evidence that Cheney,

Adams, Smith and Phillips ever pooled their profits, loaned each other money, or shared each others' drugs, the record reveals that Cheney told Smith where to obtain crack cocaine by introducing her to his source. Smith went to the house owned by her mother knowing that Cheney and Adams might be there, and knowing that the location had the reputation of being a "crack house." On the day that the undercover officers made their drug buy, Smith, Phillips, Cheney, and Adams were using the house as a common location for drug use and sales. Smith stated that Phillips told both her and Cheney that a potential buyer was approaching. In essence, the house had become a very rudimentary shopping center or flea market for crack, replete with Phillips, its "barker," and the friendly competitors who as a whole created a marketing site greater than the sum of its parts. The presence of multiple, part-time pushers and a larger supply for users produced a marketing symbiosis that far outweighed its minor competitive aspect. These facts support a finding of jointly undertaken criminal activity.

Regarding the foreseeability prong of the test, the trial court stated that Smith "knew full well that [her mother's] residence was being used as a crack house." Smith was present on the porch when Cheney and Adams displayed rocks of cocaine in their hands, and because she used Cheney's source to buy her cocaine, she could have easily foreseen that Cheney might possess an additional 3.9 grams of cocaine.

Thus the trial court's finding that Smith was accountable for all the cocaine found in the house is not clearly erroneous. Smith's base offense level was thus properly based on 5.9 grams of cocaine. For these reasons, we affirm Smith's sentence.

### B. *Denial of Reduction for Smith's Acceptance of Responsibility*

■ Smith argues that the district court erred when it denied her a two-level reduc-

---

**9.** 992 F.2d at 74.

**10.** *Evbuomwan,* 992 F.2d at 74.

**11.** A district court's findings about the quantity of drugs on which a sentence should be based are factual findings which we review for clear

error. *United States v. Palomo,* 998 F.2d 253, 258 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 358, 126 L.Ed.2d 322 (1993); *United States v. Mitchell,* 964 F.2d 454, 457 (5th Cir.1992).

**12.** *See Evbuomwan,* 992 F.2d at 74.

tion for acceptance of responsibility. U.S.S.G. § 3E1.1(a) provides: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." The commentary to that section provides:

> In determining whether a defendant qualifies under subsection (a), appropriate considerations include ... truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.[13]

That commentary requires Smith to admit, or at least not to deny falsely, all relevant conduct in order to receive the 2–point reduction for acceptance of responsibility. True, Smith admitted her relationships with Cheney, Adams, and Phillips; admitted the fact that Cheney told her where to get the cocaine; and admitted that the house belonged to her mother. But even though Smith admitted the conduct comprising the offense of conviction, she steadfastly refused to admit any connection, even vicarious, with the additional cocaine found on the floor in the house. In light of our holding that Smith is accountable for the additional cocaine, the district court was not obliged to grant the two-point reduction. Although we may not

have reached the same conclusion, the heightened deference we accord the sentencing court on review persuades us not to disturb the district court's decision to deny the two-point reduction for acceptance of responsibility.[14]

### C. Amount of Cocaine Considered in Phillips' Sentencing

Phillips raises the same issue as did Smith regarding drug quantity. He argues that he did not possess the 3.9 grams of cocaine on the floor in the house and that he did not agree to participate in any joint criminal activity with Cheney and Adams. Phillips' case for sentence vacatur and remand is stronger than Smith's. The government did not produce any evidence to prove that Phillips agreed to a joint criminal enterprise. More importantly, there is no express finding by the district court that Phillips was acting in concert with anyone other than Smith. Phillips' presentence report does not state that Phillips lived in the house; it does not identify the source of the cocaine; it does not indicate that Phillips agreed to participate in any way with Cheney or Adams, or that he helped either of them in any way. Phillips' PSR merely states that police seized 7 grams of cocaine from the house, and therefore 7 grams would be considered in Phillips' sentencing.

The factual contents of *Smith's* PSR—on the basis of which the trial court found joint enterprise as to her—cannot be used against Phillips.[15] In *United States v. Berzon*, the First Circuit reversed Berzon's sentence because the trial court evidently considered testimony adverse to Berzon given at a codefendant's sentencing hearing. It is well-settled, stated the *Berzon* court, that "a defendant has a due process right to be sentenced upon information which is not false

---

13. U.S.S.G. § 3E1.1, comment. (n. 1(a)).

14. "[T]he determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n. 5). The sentencing court's factual determinations with regard to acceptance of responsibility, therefore, are entitled to even greater deference than that accorded the court under a clearly erroneous standard of

review. *United States v. Mourning*, 914 F.2d 699, 705 (5th Cir.1990); *United States v. Roberson*, 872 F.2d 597, 610 (5th Cir.), *cert. denied*, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

15. *See United States v. Berzon*, 941 F.2d 8, 18 (1st Cir.1991).

or materially incorrect." [16] To ensure this right, Federal Rule of Criminal Procedure 32 allows a defendant to see the factual allegations in his presentence report and to have an opportunity to contest their accuracy.[17] But Phillips presumably was not permitted to see or to respond to Smith's presentence report; there is a general presumption that courts will not grant third parties access to the presentence reports of other individuals.[18] Consequently, for the sentencing court to consider information about Phillips from Smith's PSR without at least giving Phillips the opportunity to see it and contest its accuracy would clearly be improper.[19]

■ In this case, Phillips specifically objected to the trial court's consideration of the greater amount of cocaine in his sentencing. The trial court made no specific findings that Phillips was involved in any jointly undertaken criminal activity, but merely adopted the findings of Phillips' presentence report without commenting on them. This was not sufficient. When a defendant objects to particular findings in the presentence report, the sentencing court must resolve the specifically disputed issues of fact if it intends to use those facts as a basis for its sentence.[20] Before the trial court in this case could sentence Phillips based on the additional cocaine, it must have made specific findings, supported by a preponderance of the evidence, that Phillips agreed to a jointly undertaken criminal activity with Smith *and* Cheney or Adams involving the greater amount of cocaine, and that Phillips could have reasonably foreseen the amount of cocaine that would be involved in such a joint undertaking.[21]

■ Even though we affirm Smith's sentence, we are compelled to reverse Phillips' sentence in light of the lack of necessary evidence and findings. Phillips was convicted of conspiracy with Smith, but this does not necessarily mean that—for sentencing purposes—he is accountable for the same quantity of drugs, under relevant conduct, as is Smith. A conviction for conspiracy does not automatically mean that every conspirator has foreseen the total quantity of drugs involved in the entire conspiracy.[22] That Phillips agreed to conspire with Smith to distribute 2 grams of cocaine is indisputable, but the sentencing court made no finding that Phillips agreed to conspire with Cheney or Adams with regard to any amounts of cocaine they possessed.[23] Absent a finding of such an agreement, it is irrelevant whether Phillips knew or foresaw that greater amounts of cocaine were in the house.[24] Phillips' situation is controlled by an illustration in the Guidelines' commentary to § 1B1.3:

> Defendant R recruits Defendant S to distribute 500 grams of cocaine. Defendant S knows that Defendant R is the prime figure in a conspiracy involved in importing much larger quantities of cocaine. As long as Defendant S's agreement and conduct is limited to the distribution of the 500 grams, Defendant S is accountable only for that 500 gram amount (under subsection (a)(1)(A)), rather than the much larger quantity imported by Defendant R.[25]

This illustration demonstrates that the Sentencing Commission did not intend to hold persons who assist a drug dealer in one

16. *Id.*

17. *Id.*

18. *United States v. Blanco*, 884 F.2d 1577, 1578 (3rd Cir.1989).

19. *Berzon*, 941 F.2d at 20–21.

20. *United States v. Ponce*, 917 F.2d 846, 848 (5th Cir.1990), *cert. denied*, 499 U.S. 940, 111 S.Ct. 1398, 113 L.Ed.2d 453 (1991); *United States v. Rodriguez*, 897 F.2d 1324, 1327 (5th Cir.). *cert. denied*, 498 U.S. 857, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990).

21. *United States v. Evbuomwan*, 992 F.2d 70, 74 (5th Cir.1993).

22. *United States v. Webster*, 960 F.2d 1301, 1309 (5th Cir.), *cert. denied sub. nom. Nelson v. United States*, —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992); *United States v. Puma*, 937 F.2d 151, 159–60 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992).

23. *See Ponce*, 917 F.2d at 849; *United States v. Rivera*, 898 F.2d 442, 445–46 (5th Cir.1990).

24. *Evbuomwan*, 992 F.2d at 74.

25. U.S.S.G. § 1B1.3, comment. (n. 2(c)(7)).

transaction responsible for all the drugs sold or possessed by that dealer.[26] From the record we can tell nothing more than that Phillips conspired with Smith for a limited purpose, to assist in finding a customer for her on one occasion in exchange for some crack cocaine for his own use. There is no finding by the trial court that Phillips agreed to participate any further in Smith's drug activities or to participate in any activity with Cheney or Adams. In the absence of such findings, we have no choice but to vacate Phillips' sentence and remand for particular findings, and for resentencing based on such findings.

### D. *Proximity of Offenses to a School*

The drug transaction for which Phillips and Smith were convicted occurred within 1,000 feet of M.C. Williams Middle School, which brings into play a federal sentencing enhancement statute, 21 U.S.C. § 860(a).[27] At sentencing in this case, the trial court agreed that the technical requirements of the statute had been met. However, the court did not impose the statute's additional penalties, and it did not impose the base offense level increase called for by U.S.S.G. § 2D1.2 when a drug offense directly involves a protected location. The court stated that because the drug transaction occurred in the evening after school hours and did not involve school children, the sentence enhancement should not apply. This issue was not appealed by the government and is not before us. But as the trial court may reconsider the issue at resentencing,[28] we take this occasion to point out that the resolution of

this issue below was contrary to currently settled law in this Circuit. The "drug-free school zone" statute has been interpreted strictly; drug offenses within 1,000 feet of a school make the defendant subject to the increased penalties, regardless of whether the offense had anything to do with the school, school house, school children, or the like.[29]

## III

## CONCLUSION

For the foregoing reasons, we AFFIRM Smith's sentence, but VACATE Phillips' sentence and REMAND for findings and resentencing in accordance with this opinion.

DeMOSS, Circuit Judge, dissenting in part and concurring in part:

I readily concur in the language and conclusions of Parts II.C and D of the foregoing opinion, but I am unable to concur with the language or conclusions in Parts II.A and B, and I write this dissent to express my disagreement with those provisions.

### A. *Amount of Cocaine Considered in Smith's Sentencing.*

I cannot agree with the conclusion made by the trial judge and majority opinion that Smith is responsible not only for the 2 grams of cocaine she sold to the undercover agent, but also for the 3.9 grams of cocaine found on the floor of the house, for the following reasons:

26. *See United States v. Maseratti*, 1 F.3d 330, 340 (5th Cir.1993).

27. The statute provides: "Any person who violates section 841(a)(1) ... by distributing, possessing with the intent to distribute, or manufacturing a controlled substance ... within one thousand feet of, the real property comprising a public or private elementary, vocational or secondary school ... is ... subject to (1) twice the maximum punishment authorized by section 841(b) of this title." 21 U.S.C. § 860(a). The provision also mandates a minimum sentence of one year.

28. "In the interest of truth and fair sentencing a court should be able on a sentence remand to take new matter into account on behalf of either

the government or the defendant." *United States v. Kinder*, 980 F.2d 961, 963 (5th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 2376, 124 L.Ed.2d 280 (1993); *United States v. Sanchez–Solis*, 882 F.2d 693, 699 (2d Cir.1989).

29. *See United States v. Echevaria*, 995 F.2d 562, 565 (5th Cir.1993) (enhancement upheld on facts nearly identical to this case); *United States v. Wake*, 948 F.2d 1422, 1432–33 (5th Cir.1991) (holding that Congress intended a "strict liability approach" to 21 U.S.C. 860), *cert. denied*, — U.S. —, 112 S.Ct. 2944, 119 L.Ed.2d 569 (1992). *Wake* has been cited with approval by two other Circuits. *See United States v. McDonald*, 991 F.2d 866, 869 (D.C.Cir.1993); *United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir.1992).

(a) The trial judge's articulation of a finding about "jointly undertaken activity" quoted verbatim in the majority opinion is only conclusional. If you read it carefully, you will see that the judge is saying that "I find jointly undertaken activity because there was jointly undertaken activity." Inferentially at least, if not expressly, the trial judge found that Smith and Cheney were making sales in competition with each other. In my book, by definition, competitors are not engaged in a jointly undertaken activity. The trial judge attempted to talk himself around the concept of competition by saying that, in his view, competition would not "def[y] a conspiracy mentality." I am at a loss to understand the significance of a "conspiracy mentality." Whether or not a person may have a "mental inclination" to enter into conspiracies does not establish that any "conspiracy" was in fact was entered into.

(b) While the trial judge purported to rely on findings in the presentence report of Smith, the probation officer in fact made no findings of any kind regarding "jointly undertaken activity" with Cheney and Adams. The sole rationale offered by the probation officer in his original report for the quantity of drugs involved is the following sentence:

> "Case investigative materials established that agents seized approximately 7 grams of cocaine base in the instant case."

In response to objection raised by Smith, the probation officer attempted to "maintain his position" by contending the following:

(1) He claimed that the "undercover police officer" disclosed that the crack cocaine found near the marked $100 bill belonged to the defendant. However, the "undercover police officer" testified under oath at trial that after buying the 2 grams from Smith, he gave the bust signal, walked out to his van and left the premises; the officer therefore could not have had any firsthand knowledge or information whatsoever regarding the ownership of the cocaine found on the floor of the house;

(2) The probation officer also argues that the jury verdict found Smith guilty of conspiracy with Phillips to possess with intent to distribute "in excess of 5 grams of cocaine," thereby rendering irrelevant her argument that she only possessed the 2 grams she sold to the undercover police officer. It is settled law in this Circuit, though, that the allegation of a quantity of a controlled substance is not an essential element of the crime, therefore a jury finding in that regard is mere surplusage; and

(3) Finally, the probation officer states that Smith was being held accountable for the full 7 grams of cocaine since it was part of the conspiracy she jointly undertook with others and was reasonably foreseeable by her. However, that conclusion is just like the trial judge's conclusion, totally unsupported by reference to any facts.

(c) The majority opinion recognizes that there was no evidence that Cheney, Adams, Smith and Phillips ever "pooled their profits, loaned each other money or shared each other's drugs." In addition, there is no evidence of any kind either in the trial transcript or in the presentence report which shows that Cheney, Adams, Smith and Phillips ever pooled any money to pay for rent, utilities, food or other expenses connected with the house at which the sale occurred.

(d) The commentary to U.S.S.G. § 1B1.3, Note 2(c)(6) provides as follows:

Defendant P is a street-level drug dealer who knows of other street-level drug dealers in the same geographic area who sell the same type of drug as he sells. Defendant P and the other dealers share a common source of supply, but otherwise operate independently. Defendant P is not accountable for the quantities of drugs sold by the other street-level drug dealers because he is not engaged in a jointly undertaken criminal activity with them. In contrast, Defendant Q, anoth-

er street-level drug dealer, pools his resources and profits with four other street-level drug dealers. Defendant Q is engaged in a jointly undertaken criminal activity and, therefore, he is accountable under subsection (a)(1)(b) for the quantities of drugs sold by the four other dealers during the course of his joint undertaking with them because those sales were in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity.

In my view, Note 2(c)(6) is relevant and controlling as to the facts of this case regarding whether or not jointly undertaken activity had occurred. Surprisingly, neither the trial court, the probation officer nor the majority opinion addresses this note. The meager facts cited by the majority opinion to attempt to support the trial court's conclusion of "jointly undertaken activity" are rendered totally insufficient by Note (c)(6). Sharing a common source of supply and having knowledge of others selling the same type of drug in the same geographic area are facts which the first sentence of Note (c)(6) expressly assumes and finds inadequate to support a determination of jointly undertaken activity. As indicated by the third sentence of Note (c)(6), it is "pooling [their] resources and profits" which is the key ingredient that determines when several individual drug sellers are engaged in a jointly undertaken activity. There is nothing in this case that supports a finding of "pooling resources and profits." The majority attempts to embellish the meager facts upon which it relies with words like "rudimentary shopping center," "flea market for crack," "barker" and "marketing symbiosis," but these terms find no support whatsoever in the trial record or in the presentence report, and are simply an exercise of poetic license by the majority.

For the foregoing reasons, I think the trial judge clearly erred in concluding that there was any "jointly undertaken criminal activity" between Smith and either Cheney or Adams which would make Smith accountable for the quantities of cocaine found on the floor of the house after the raid. Absent a "jointly undertaken activity," the second aspect of "foreseeability" is irrelevant. In my view, Smith's base offense level should have been based only on the 2 grams of cocaine she sold to the undercover officer.

### B. Reduction for Smith's Acceptance of Responsibility.

From my reading of the record in this case, I am satisfied that early on, Smith attempted to plead guilty to the offense of selling the 2 grams of cocaine to the undercover police officer. This case is one of those "rare situations" when a defendant is convicted after a trial instead of after a plea of guilty but should still be entitled to a reduction for acceptance of responsibility. See U.S.G.G., § 3E1.1, Comment Note 2. In her objections to her presentence report, Smith states that she offered to plead guilty to the 2 grams and that the only reason her case went to trial was the fact that the government had incorrectly assumed that the quantity of cocaine was an element of the offense. At the sentencing hearing, Smith's counsel argued:

> "She has acknowledged her guilt to me from the outset, and we attempted to plead guilty, but every effort to plead guilty required a stipulation to all the cocaine. It simply wasn't true."

Smith was put into a no-win situation. At the time she was attempting to plead guilty, the government expected her to admit, as an element of the offense, that she herself possessed 7 grams of cocaine. During the sentencing hearing, the trial court acknowledged that Smith had admitted her guilt for the 2-gram transaction but refused to give the § 3E1.1(a) reduction, citing concerns that Smith knew of the drug activity at her mother's house, that she was the mother of three children and that she possessed some medical training. I recognize, of course, the deferential standard of review given to sentencing judges on this issue, but I am convinced that the trial judge's decision to deny the reduction for acceptance of responsibility was at least in part based on the erroneous (in

my view) finding of joint activity. The denial, therefore, should in my view be reconsidered as part of the reconsideration of the quantity issue.

In conclusion, I feel compelled to make some comments about the anomalous position in which this case is left as a result of the majority opinion. First of all, Smith, who had absolutely no criminal history points, gets her sentence affirmed based an offense level using more than 5 grams of cocaine as the principal ingredient. On the other hand, Phillips, who had a criminal history category of Part V, gets his sentence reversed, and under the holdings of Part II(c), with which I concur, his offense level will be determined by the quantity, 2 grams, actually involved in his conspiracy with Smith. We are faced first with the anomaly, then, of two defendants convicted under the same counts of the indictment whose offense levels will be determined by two different quantities. The second anomaly arises from the fact that on resentencing Phillips will be susceptible to the enhanced penalties under 21 U.S.C. § 860(a), as he clearly should be, but the clear error of the trial judge in refusing to apply § 860(a) in the determination of Smith's sentence will be left to stand. I have always understood that one of the primary purposes of the Sentencing Guidelines was to ensure that individuals who engage in the same or similar criminal conduct will have their sentences determined on the same or similar theories. I am disappointed that I was unable to persuade my colleagues that the way to avoid these anomalies was to reverse the sentence of Smith as well and place both defendants back before the trial judge for a resentencing using the same quantity and the application of § 860.