United States Court of Appeals
Fifth Circuit

**F I L E D**

October 14, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-51298
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JUAN MIGUEL JIMENEZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No.:  W-02-CR-113-2

_____

Before JOLLY, JONES, and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Juan Miguel Jimenez ("Jimenez") appeals his sentence following his guilty plea conviction for conspiracy to possess with intent to distribute more than 50 kilograms of marijuana.  We VACATE the sentence and REMAND for resentencing.

I

Investigators learned that Richard Anthony Martinez ("Martinez"), with the assistance of others, was distributing large quantities of marijuana and cocaine.  Based on a confidential informant's tip, investigators followed Joe Torres, Jr. ("Torres")

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and John Allen Pena ("Pena") to 1719 Clark Street in Waco, Texas, where Torres and Pena briefly entered the residence and left. Investigators pulled over their car and found 4.88 kilograms of marijuana and 26.91 grams of cocaine. Torres informed the investigators that he worked for Martinez, and that Martinez stored marijuana and cocaine at 1719 Clark Street and at 3621 Trice Street. During a search of 1719 Clark Street, investigators found 31.65 kilograms of marijuana, 273.1 grams of cocaine, drug scales, drug ledgers, and packaging materials. During the search, officers observed a white, four-door vehicle with a black hood and a black trunk slowly pass by the house. According to the Presentence Investigation Report ("PSR"), Jimenez rode in this car with Martinez and Tony Oliverez past 1719 Clark Street. Martinez remarked that the police were "getting his stuff," before asking Jiminez and Tony Oliverez to take him to 3621 Trice Street.

Officers observed four individuals arrive at 3621 Trice Street in the same white car that was seen earlier driving past 1719 Clark Street. Three males entered the house and left carrying trash bags, which they loaded into the car. When police stopped the car, they found Martinez, Jimenez, Tony Oliverez, and Anna Robles, as well as 15.51 kilograms of marijuana in the trash bags. Jimenez, who was unemployed, possessed $1,440 in cash.

Martinez told authorities that he had been selling marijuana since high school and that Luis Sais had been his source. Martinez received between 160 and 180 pounds of marijuana from Sais every

2

four to six days for eighteen months.  He received about four deliveries of cocaine from Sais totaling five kilograms over about six months.

Robles told investigators that Torres, Frank and Tony Oliverez, Guillermo Perez, Pena, and Philip Soto distributed marijuana and cocaine for Martinez.  She said that Jimenez knew that Martinez distributed illegal drugs, but that Jimenez worked for Oliverez, and not for Martinez.  She stated that Martinez was not Oliverez's source for marijuana.

Martinez initially told investigators that Jimenez did not know what was going on at Trice Street and that Martinez wanted to take the blame for everything.  After first telling authorities that Jimenez did not "have anything to do with the marijuana," and that Jimenez did not know what was going on, Martinez later stated that over a period of approximately twelve to eighteen months he "on occasion" had given Jimenez "from ounces to under a pound" of marijuana.  The PSR states that Martinez informed the case agent that Jimenez was among the people who worked for him in the marijuana and cocaine distribution business.

Jimenez had been arrested two months earlier by state police for engaging in organized crime, delivery of marijuana.  When police found Jimenez and four other individuals in a stalled car, Jimenez and two other individuals approached the officer while two others walked down a ditch and across a field.  Although eight to ten small baggies of marijuana, scales, a firearm, and ammunition

3

were found in the ditch, charges were not filed against Jimenez because of insufficient evidence. Jimenez was also arrested one month later by state police for possession of marijuana under two ounces.

Jimenez told the probation officer that on the night of his arrest, Martinez asked Tony Oliverez to take Martinez and Robles somewhere, but did not say where he needed to go or why. He stated that Martinez instructed him and Oliverez to carry trash bags from 3621 Trice Street to the car without telling them what was inside the bags. Jimenez conceded that he smelled marijuana, but stated that he thought it was because he had been smoking marijuana earlier that day. Notwithstanding his guilty plea, Jimenez told the probation officer that, prior to June 14, he had never done anything for Martinez or any of the other co-defendants involving marijuana and that he possessed marijuana only for his own personal use.

The PSR recommended that Jimenez be held responsible, not only for the 15.51 kilograms of marijuana found in the car when he was arrested, but also for the 31.65 kilograms of marijuana and 273.1 grams of cocaine recovered from 1719 Clark Street. With a total of 47.16 kilograms of marijuana and a marijuana equivalent of 54.62 kilograms for the cocaine, Jiminez was responsible for 101.78 kilograms of marijuana. The base offense level for at least 100 kilograms but less than 400 kilograms of marijuana is 26. With a

4

total offense level of 26 and a criminal history category of I, the Guidelines range was 63 to 78 months.

Jimenez objected to being held accountable for the cocaine and the marijuana at 1719 Clark Street, as Martinez gave varying accounts of Jiminez's involvement and Jimenez alleged that he agreed only to retrieve marijuana from 3621 Trice Street. Jimenez did not present any evidence at the sentencing hearing. Under cross-examination, the Government's witness, McLennan County Deputy Sheriff Evans, conceded that Martinez made conflicting statements regarding Jimenez's level of involvement in the conspiracy and that Martinez had said that he gave Jimenez only relatively small amounts of marijuana on occasion. Evans also conceded that the investigators previously had not been aware of Jimenez's involvement in the criminal activity and did not include any information about him in the affidavit or the search warrant.

Jimenez argued that there was no indication of his involvement in cocaine distribution and that the cocaine should not be considered in determining his sentence. He argued that the cocaine and the marijuana at 1719 Clark Street were not part of jointly-conducted activity in which he agreed to participate and were not reasonably foreseeable to him, where he merely drove Martinez by the house and heard him say "they got my stuff."

The district court stated:

> I think the evidence is clear that Mr.
> Jimenez was well aware of the scope of the

5

enterprise for various reasons, driving by the first house, statements made by Mr. Martinez.

The Court would find that the appropriate relevant conduct is that as determined by the probation office and adopts those findings of the probation office in the report.

The district court sentenced Jimenez to 63 months imprisonment. Jimenez filed a timely notice of appeal.

II

Jimenez argues that the jointly undertaken criminal activity was solely the retrieval of the marijuana from 3621 Trice Street and that there was no agreement as to the drugs at 1719 Clark Street. Pursuant to U.S.S.G. § 1B1.3, Jimenez argues that he should have been accountable only for the marijuana retrieved from 3621 Trice Street. He contends that there was no evidence that he agreed to distribute cocaine. He maintains that the district court erred by focusing solely on the foreseeability of the Clark Street drugs without first considering whether the drugs at Clark Street were part of an agreement to engage in jointly undertaken criminal activity. He concedes that foreseeability is not at issue on appeal.

Jiminez likens his situation to several examples in the Guidelines, including the following:

Defendant R recruits Defendant S to distribute 500 grams of cocaine. Defendant S knows that Defendant R is the prime figure in a conspiracy involved in importing much larger quantities of cocaine. As long as Defendant S's agreement and conduct is limited to the distribution of the 500 grams, Defendant S is

6

accountable only for that 500 gram amount (under subsection (a)(1)(A)), rather than the much larger quantity imported by Defendant R.

U.S.S.G. § 1B1.3, comment. n.2(c)(7).

We review the district court's application and interpretation of the Guidelines de novo and its factual findings for clear error. United States v. Hammond, 201 F.3d 346, 350 (5th Cir. 1999). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." United States v. Puig-Infante, 19 F.3d 929, 942 (5th Cir. 1994).

"Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1 comment. (n.12) (2001). Where the Guidelines provide for more than one base offense level, the base offense level is determined based upon all reasonably foreseeable acts of others in furtherance of the conspiracy. Id., § 1B1.3(a)(1)(B). Jimenez is accountable for the conduct of others that was both: "(i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." Id., § 1B1.3, comment (n.2).

The sentencing court "must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake." Id. "In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement), the court may consider any explicit

7

agreement or implicit agreement fairly inferred from the conduct of the defendant and others." Id. If the conduct of others is not within the scope of the defendant's agreement, the conduct should not be included in calculating the defendant's offense level. United States v. Evbuomwan, 992 F.2d 70, 73 (5th Cir. 1983).

The district court must make specific findings regarding all contested facts contained in the PSR that are relevant to sentencing. FED. R. CRIM. P. 32(i)(3). The district court can satisfy this requirement by adopting the PSR "when the findings in the PSR are so clear that the reviewing court is not left to second guess the basis for the sentencing decision." Puig-Infante, 19 F.3d at 943 (internal quotation marks and citations omitted). Where a defendant objects to a particular finding in the PSR, the sentencing court must resolve the disputed factual issues by making specific findings, supported by a preponderance of the evidence. United States v. Smith, 13 F.3d 860, 867 (5th Cir. 1994). However, if the facts in the PSR have an adequate evidentiary basis and the defendant does not present rebuttal evidence the district court can adopt the facts in the PSR without inquiry.

Jimenez's contention that he should be held accountable for only the 15.51 kilograms of marijuana removed from 3621 Trice Street goes too far in the light of his guilty plea to conspiracy to possess with intent to distribute more than 50 kilograms of marijuana. Nonetheless, Jimenez's assertion that the district

8

court failed to make the requisite finding that his agreement extended to the distribution of cocaine has merit.

Jimenez specifically objected to paragraph 27 of the PSR, which states that Martinez informed the case agent that Jimenez worked for him "in the marijuana and cocaine distribution business." In his objection, Jimenez argued that "there is absolutely no basis for holding him accountable for the cocaine" and that he "was not involved in any way in the distribution of cocaine, nor was he even aware that Martinez was involved in the distribution of cocaine." The probation officer's response to this objection, in the Addendum to the PSR, does not directly address Jimenez's contentions regarding his lack of involvement in Martinez's cocaine distribution business. The Addendum states merely that Jimenez should be held accountable for the marijuana and cocaine seized from 1719 Clark Street based on the following: (1) Jimenez was observed assisting Martinez in the attempt to keep police from confiscating the marijuana that Martinez had stored at 3621 Trice Street; (2) in his debriefing statement, Martinez indicated that Jimenez was working for him in the distribution of illegal drugs; (3) Jimenez had $1440 in cash when he was arrested; and (4) Jimenez had been arrested twice for marijuana offenses.

At the sentencing hearing, Jimenez reiterated his objection, arguing that there is "no indication that Mr. Jimenez was involved in any way with distributing, selling, possessing cocaine," and that the cocaine could not be considered in calculating his

sentence because it was not part of any jointly undertaken activity. The district court overruled the objection, and adopted the factual findings of the PSR, stating: "I think the evidence is clear that Mr. Jimenez was well aware of the scope of the enterprise for various reasons, driving by the first house, statements made by Mr. Martinez." The district court did not make any specific finding regarding whether cocaine distribution was part of the jointly undertaken criminal activity.

Ordinarily, the district court's adoption of the PSR's findings would satisfy the requirement that it make specific findings as to all contested facts. See Puig-Infante, 19 F.3d at 943. This court, however, in an analogous case, has found that the district court erred in failing to make a particularized finding of an agreement to participate in a criminal scheme. Hammond, 201 F.3d at 351-52.

In Hammond, the probation office recommended that the guideline range be determined based upon the total loss resulting from an embezzling scheme, including losses caused by Hammond as well as two other individuals. Id. at 351. Hammond objected on the same grounds as Jimenez -- that the losses caused by others should not be attributed to him absent proof of an agreement between Hammond and the others to engage in the fraud. Id. The district court adopted the PSR, reasoning that Hammond should have reasonably foreseen the other individuals' misconduct without making a finding that Hammond agreed to participate in the scheme

10

with them.  Id. at 352.  The sentence was vacated and the case was remanded to the district court for resentencing.

The only evidence of the existence of an agreement between Jimenez and Martinez to distribute cocaine is paragraph 27 of the PSR, which states that Martinez informed the case agent that Jimenez, among others, worked for him in the marijuana and cocaine distribution business.  The district court may have inferred from this general statement the existence of an agreement between Jimenez and Martinez to distribute both cocaine and marijuana.  If it did so, the district court's implicit finding would be based upon the PSR's implicit finding that Jiminez agreed to participate in the distribution of cocaine, which is an impermissible inference based upon an inference.  See Evbuomwan, 992 F.2d at 74.

Moreover, the general statement in paragraph 27 of the PSR is supported by neither more specific information in the PSR nor sentencing testimony concerning the scope of Jimenez's activities.  Paragraph 28 of the PSR indicates that Martinez identified Jimenez as one of the persons who assisted him with the distribution of marijuana, but omits a specific reference as to cocaine.  The testimony at the sentencing hearing indicated that Jimenez received small amounts of marijuana from Martinez "on occasion" for a period of twelve to eighteen months, but does not mention cocaine.  The fact that Jimenez rode by 1719 Clark Street with Martinez and heard Martinez say that the police were "getting my stuff" does not show an agreement to distribute cocaine.

11

III

Because the record reflects no explicit finding regarding whether the distribution of cocaine was within the scope of the criminal activity that Jimenez agreed to undertake, we VACATE Jimenez's sentence, and REMAND the case to the district court for resentencing.

VACATED and REMANDED.